**Affirmed in Part and Reversed and Remanded in Part and Opinion filed August 25, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00366-CV

---

## IN THE INTEREST OF L.T.H., A CHILD

---

**On Appeal from the 309th District Court
Harris County, Texas
Trial Court Cause No. 2012-70308**

---

## O P I N I O N

In this appeal from a suit to modify the parent-child relationship, a mother challenges the trial court's rendition of judgment on a mediated settlement agreement between mother and father, the purpose of which was to resolve disputes between them relating to father's periods of possession of their child. On appeal, mother contends that the trial court's judgment is inconsistent with the mediated settlement agreement. Because we conclude that the disputed provision of the mediated settlement agreement is ambiguous and the mediator is the proper

authority to resolve the dispute, we reverse that portion of the judgment concerning possession and access and remand the case to the trial court for further proceedings.

## Factual Background

L.T.H. is a child born in November 2012. In June 2013, the trial court signed a "Reformed Agreed Order in Suit Affecting the Parent-Child Relationship" based on a mediated settlement agreement between mother and father, adjudicating the child's parentage and establishing a parenting plan. The order addressed issues including conservatorship, possession and access, and child support.

In June 2014, father filed a petition to modify the parent-child relationship. Father claimed a material and substantial change in the circumstances of the child or the parties and sought to revise and expand his possessory rights under the reformed agreed order. Mother answered and later filed a counter-petition.

On August 22, 2014, the trial court signed temporary orders providing that father would have possession of and access to the child pursuant to a modified standard possession order, which expanded father's periods of possession until the child reached the age of three. After the child reached the age of three, the temporary orders provided that father would have possession and access pursuant to a standard possession order.

In February 2015, father amended his petition to seek possession and access pursuant to a "fully expanded Standard Possession Order." Father requested that, until the child begins "actual school,"[1] the trial court award father "the right to possession of his son when his mother is at work and the child would normally be

---

[1] In the temporary orders, "school" is defined as "the daycare, primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides."

2

at daycare" and "the right of first refusal to have possession of the child if [mother] will be out of town overnight and unable to keep the child personally." Additionally, father requested that the trial court order mother to surrender the child on Thursdays at 3:00 p.m., until the child begins "actual school." Father also requested specified periods of possession of the child during the summer of 2015.

The trial court referred the parties to mediation with mediator Alice O'Neill. On February 6, 2015, mother and father reached a settlement and executed a mediated settlement agreement (MSA). The MSA recited in boldfaced, capitalized, and underlined letters that it was not subject to revocation, and it was signed by the parties and their attorneys. The terms of the parties' agreement were contained in an attached Exhibit A incorporated into the MSA,[2] which provided in relevant part:

POSSESSION AND ACCESS: Dad's periods of possession are to begin at 3 pm pickup from daycare or mom's residence. If the child is not at either location then Mom is to notify Dad so that he cannot pickup from the child's location

Dad"s periods of possession: Per Temporary Orders: Expanded SPO

If Dad does not take the child to daycare on his Friday possession period he must notify mom the location of the child where.

Kimberly Levi to draft Final Order: Order will include the Temp Order and the above additions to the Temp Orders.

The MSA also provided that the parties "shall" submit to binding arbitration with O'Neill "regarding all (a) drafting disputes, (b) issues regarding interpretation of this [MSA] and (c) issues regarding the intent of the parties as reflected in this [MSA]."

On February 27, in a hearing which mother did not attend, the trial court

---

[2] The relevant portion of Exhibit A is reproduced as it appears in the clerk's record. Ms. Levi is father's attorney.

3

orally granted the relief agreed to in the MSA. Less than a month later, the trial court held another hearing to address a dispute that had arisen concerning the language of the proposed order on the MSA as drafted by father's attorney. At the hearing, mother took the position that the parties had agreed to an order incorporating the August 22, 2014 temporary orders as modified in Exhibit A to the MSA, and that—as in the temporary orders—the standard possession order would apply once the child reached the age of three. Mother complained that, contrary to the parties' agreement, the proposed order extended father's periods of possession after the child turned three beyond what was contemplated in the temporary orders.[3] The trial court disagreed, concluding that "the MSA is clear."

On March 20, 2015, the trial court signed an "Agreed Order in Suit to Modify Parent-Child Relationship" based on the MSA. This final order made several modifications to father's periods of possession, including granting father certain possessory rights after the child reached the age of three that differed from that portion of the temporary orders providing for a standard possession order after the child reached the age of three. This appeal followed.

## ISSUES AND ANALYSIS

In one issue, mother contends that the trial court abused its discretion by granting judgment on an order that is inconsistent with the MSA. Father responds that mother waived her complaint by inaction in the trial court and in this court.

---

[3] For example, mother's attorney argued at one point: "we will agree to the temporary orders as written with the understanding of knowing that once the child was no longer three that this time of keeping the child an extra day on Fridays was going to go away. We made an agreement based on what was written in the temporary orders." Toward the end of the hearing, mother's attorney again argued, "[W]hat we are disputing is what happens after the child turns three. In the temporary orders it says, after the child turns three, they go back to a standard possession order."

4

*Waiver*

We begin with father's multiple complaints that mother has waived any right to appellate relief. Father argues that mother (1) failed to file any post-judgment motion apprising the trial court of the complaints she raises in this appeal, (2) failed to cite to the record, (3) failed to provide any legal authorities addressing the specific issue presented, (4) failed to provide any legal analysis pertaining to the specific issue presented, (5) cited and relied on documents in an appendix not contained in the record, and (6) requested incorrect relief in her brief. Father also argues that, even if mother had preserved her sole issue for appeal, her failure to request findings of fact and conclusions of law has "created an insurmountable procedural obstacle to appellate relief."

**1.      Mother did not waive her right to appeal by inadequate briefing.**

As an initial matter, we agree that we may not consider documents contained in the appendix to mother's brief which are not in the record (complaint 5). *See WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("[W]e cannot consider documents attached as appendices to briefs and must consider a case based solely upon the record filed."). But father cites no authority to support his argument that attaching such documents to a party's appellate brief waives their right to appeal, and we decline to so hold.

Father also complains that mother has waived her appellate issue by briefing waiver. Father alleges that mother failed to provide citations to either the clerk's or reporter's records, identify controlling legal authorities and analysis, or include the subject matter of her issue in the table of contents, in violation of Texas Rules of Appellate Procedure 38.1(b), (d), (g), (h), and (i) (complaints 2, 3, and 4). *See* Tex. R. App. P. 38.1.

We acknowledge that mother's brief is not a model of clarity and that she has not provided citations to the record. But mother identifies the order that is the subject of her appeal and the operative documents, the dates and the substance of two hearings in the trial court, and the specific provisions of the order that she contends are inconsistent with the MSA. The documents discussed in mother's brief are easily located in the relatively short clerk's record, and the reporter's records of the two hearings each contain less than ten pages of transcription to compare to the assertions in mother's brief. Mother also cites to Family Code section 153.0071 and supporting legal authorities for the general proposition that a trial court abuses its discretion in granting a judgment inconsistent with the terms of a mediated settlement that satisfies the statutory formalities. *See* Tex. Fam. Code § 153.0071; *In re Lee*, 411 S.W.3d 445, 455 (Tex. 2013); *In re S.A.D.S.*, 413 S.W.3d 434, 438 (Tex. App.—Fort Worth 2010, no pet.). Further, in response to father's complaints, mother filed a reply brief in which she responded to father's arguments with citations to the record and additional relevant authorities.

The Supreme Court of Texas has repeatedly made clear that "[d]isposing of appeals for harmless procedural defects is disfavored." *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) (citing *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam)). Instead, appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver. *Id.* Appellate courts must treat the statement of an issue "as covering every subsidiary question that is fairly included." *Id.* (citing Tex. R. App. P. 38.1(f)). "An appellant can preserve error 'in the body of their appellate brief,' even if it is not separately listed in the notice of appeal or presented as an issue in the brief." *Id.* (quoting *Perry*, 272 S.W.3d at 586). We decline to hold, on this record, that mother has waived her appellate issue by inadequate briefing.

Finally, father complains that mother waived any right to appellate relief because the only relief she requested was a reversal and remand to the trial court "to enter a judgment that conforms to the parties' mediated settlement agreement" (complaint 6). According to father, mother failed to comply with the requirement of Rule 38.1(j) that an appellant's brief contain "a short conclusion that clearly states the nature of the relief sought," *see* Tex. R. App. P. 38.1(j), because mother failed to "specif[y] what that judgment should include and exclude."

Mother's brief makes clear that her complaint is that the trial court's order does not accurately reflect the terms of the MSA and she requests that this court correct that perceived error. Further, in reply to father's complaints, mother more specifically asserts that she is requesting that this court order the case remanded to the trial court with an instruction to refer the parties back to mediation to resolve the parties' disputes as provided in the MSA or, alternatively, to modify the trial court's order and affirm as modified. Father cites no authority that would require this court to reject mother's request for appellate relief because she failed to strictly comply with Rule 38.1(j), and we reject father's argument as inconsistent with the Supreme Court's directive that we construe appellate briefs reasonably, yet liberally. *See Weeks Marine*, 371 S.W.3d at 162. We conclude that mother has substantially complied with Rule 38.1 and reject father's assertion that mother has waived her right to appellee review on this basis.

Having rejected father's complaints of briefing waiver by mother, we next turn to his allegation that mother failed to preserve her appellate issue by her inaction in the trial court.

## 2.     Mother preserved her complaint in the trial court.

Father contends that mother waived any complaint about the trial court's order because she did not preserve her complaint below, either by filing a motion

7

for new trial; a motion to modify, correct, or reform the judgment; a motion for judgment as a matter of law; or some other means. *See* Tex. R. App. P. 33.1(a)(1); *Brantley v. Brantley*, No. 14-11-00583-CV, 2012 WL 727700, at *3 (Tex. App.—Houston [14th Dist.] Mar. 6, 2012, no pet.) (mem. op.) (holding that mother's post-judgment motion failed to alert trial court to specific appellate complaint). Mother responds by citing to the record of the March 20, 2015 hearing and arguing that that she made the trial court aware of her objection to the proposed order's inconsistency with the parties' MSA by disputing its provisions at that hearing.[4]

As discussed above, mother asserted in her opening brief that she objected to the proposed order at the hearing, and the record reflects that mother articulated her objections with sufficient specificity to make the trial court aware of the complaint. Further, the trial court ruled on mother's objection by expressing its disagreement with mother's interpretation of the MSA and signing the order drafted by father's attorney. Therefore, mother satisfied the preservation requirements of the appellate rules. *See* Tex. R. App. P. 33.1(a); *Barina v. Barina*, No. 03-08-00341-CV, 2008 WL 4951224, at *2–3 (Tex. App.—Austin Nov. 21, 2008, no pet.) (mem. op.) (holding that counsel's statements at hearing were sufficient to make trial court aware of mother's complaint that proposed divorce decree was inconsistent with the parties' mediated settlement agreement concerning father's periods of possession). Further, as mother points out, in a nonjury case, a motion for new trial is a prerequisite to a complaint on appeal only in certain circumstances not applicable here. *See* Tex. R. Civ. P. 324. We hold that mother did not waive her complaint by failing to raise it in the trial court.

---

[4] In a sur-reply brief, father complains that mother "cites to literally the entirety of the reporter's record" without pointing out any specific language where she raises the complaints asserted in her brief. The entirety of the reporter's record is nine pages of text.

8

## Analysis of Mother's Issue

In her sole issue, mother contends that the trial court abused its discretion by failing to render a judgment consistent with the parties' MSA. A trial court abuses its discretion if it reaches a decision that is arbitrary and unreasonable, or if it fails to analyze or apply the law correctly. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992).

Under the Texas Family Code, mediated settlement agreements are governed by sections 6.602 and 153.0071, respectively. *See* Tex. Fam. Code §§ 6.602, 153.0071; *Milner v. Milner*, 361 S.W.3d 615, 618–19 (Tex. 2012); *In re Lee*, 411 S.W.3d 445, 451–52 (Tex. 2013). Section 6.602 applies to property division, while section 153.0071 applies to suits affecting the parent-child relationship. *See Barina*, 2008 WL 4951224, at *4 n.2.

Relevant here, section 153.0071(e) unambiguously provides that a party is entitled to judgment on an MSA that meets the statutory formalities "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *See* Tex. Fam. Code § 153.0071(e); *Lee*, 411 S.W.3d at 453.[5] It is undisputed that the MSA in this case complies with Family Code section 153.0071(d) and that the parties are entitled to judgment in the form of a modification order based on the MSA.[6] *See* Tex. Fam. Code § 153.0071(d); *Lee*, 411 S.W3d at 458–59.

---

[5] Though not relevant here, section 153.0071 provides an exception to the statutory mandate in circumstances involving family violence. *See* Tex. Fam. Code § 153.0071(e-1); *Lee*, 411 S.W.3d at 453.

[6] Section 153.0071(d) provides:

A mediated settlement agreement is binding on the parties if the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

In rendering judgment on an MSA, trial courts may include terms necessary to effectuate and implement the parties' agreement, so long as they do not substantively alter it. *In re Lee*, 411 S.W.3d at 458 n.17. The Family Code does not authorize a court to modify an MSA before incorporating it into a decree. *Diggs v. Diggs*, No. 14-11-00854-CV, 2013 WL 3580424, at *10 (Tex. App.—Houston [14th Dist.] July 11, 2013, no pet.) (mem. op.).

According to mother, the trial court's final order substantially differs from the parties' MSA because it awards father additional time with the child that he did not have under the temporary orders after the child reached the age of three, and changes the child's pick-up and return times, resulting in father having more possession time than that awarded in the parties' MSA. Among other things, mother complains that in the section of the final order providing for a standard possession order after the child reached the age of three, father's periods of possession included the following for Thursdays and Fridays:

> **Thursdays** – On Thursday of each week during the regular school term, beginning at the time the child's school is regularly dismissed, or at 3:00 pm if the child is enrolled in daycare, and ending at the time the child's school/daycare resumes on Friday. It is further ORDERED that **[father]**, at his own election, may keep the child home from daycare on Fridays that follow a Thursday period of possession as long as **[father]** notifies **[mother]** in writing via text message or email ahead of time of whether the child will be in daycare on a particular Friday or not and, if the child will not be in daycare, provide a general itinerary of the child's whereabouts during the time the child might have otherwise been in daycare.[7]

---

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

Tex. Fam. Code 153.0071(d).

[7] This provision substantially mirrors the corresponding provision in the August 22, 2014

10

In contrast, the section of the temporary orders applicable after the child reached the age of three gave father the right to possession of the child only on Thursdays as follows:

> **Thursdays** – On Thursday of each week during the regular school term, beginning at the time the child's school is regularly dismissed and ending at the time the child's school resumes on Friday.

Mother points out that the fourth line of Exhibit A to the MSA reflects the parties' agreement to "Dad's periods of possession: Per Temporary Orders: Expanded SPO" and argues that the language in the trial court's final order is inconsistent with the temporary orders. Mother also argues that nothing in the temporary orders entitles father to a full day of possession of the child on Fridays after the child reaches three years of age.

In her reply brief, Mother more specifically argues that the phrase "Per Temporary Orders: Expanded SPO" in the MSA "informs us that an expanded standard possession order is set forth in the parties' temporary orders." But, mother argues, the final order provides for possessory rights inconsistent with the terms of the temporary orders contained in the section providing for a standard possession order applicable after the child turns three. The crux of mother's argument, as we understand from both her opening brief and her reply brief, is that the trial court erred by concluding that the terms of the expanded standard possession order were to continue after the child turned three, contrary to the temporary orders.[8]

---

temporary orders concerning the modified possession order applicable *before* the child reached the age of three, with the exception of the 3:00 p.m. start time. As she does on appeal, Mother pointed out this specific provision to the trial court at the March 20 hearing.

[8] In a sur-reply, father contends mother's arguments in her reply brief are new arguments that may not be raised for the first time in a reply brief. *See Tex. Ear Nose & Throat Consultants, PLLC v. Jones*, 470 S.W.3d 67, 84 n.15 (Tex. App.—Houston [14th Dist.] 2015, no pet). We disagree. As we have explained, the substance of mother's complaint was discernable from her opening brief. To the extent that mother provided additional argument in reply to father's

Father disputes mother's interpretation, arguing that mother fails to explain why her interpretation "is necessarily the most correct interpretation of that language" and asserts that "[a] better interpretation" is that "[father's] periods of possession are per the temporary orders but with rights that are expanded beyond the standard possession order." Father further argues that "there is no evidence in the record that [mother's] interpretation of the language in question is more correct than [father's] interpretation of it, or, more importantly, that the trial court's interpretation of it constitutes a clear abuse of discretion under the circumstances presented." According to father, both mother and the record fail to provide any explanation as to what the term "Expanded SPO" was intended to mean. Father posits that the term "could very well refer to rights of possession that are more generous to [father] than as set forth in the standard possession order."

We apply the rules of contract interpretation to the MSA. *See Milner*, 361 S.W.3d at 619 (concluding that parties' dispute over interpretation of mediated settlement agreement concerning property division was a matter of contract interpretation); *Diggs*, 2013 WL 3580424, at *10–11 (concluding that mother's complaints that the divorce decree did not properly reflect the terms of the property division in parties' mediated settlement agreement was an issue of contract interpretation). If the MSA's language can be given a certain and definite meaning, the agreement is not ambiguous, and its construction is a matter for the court. *See Milner*, 361 S.W.3d at 619. If the MSA is susceptible to more than one reasonable interpretation, then it is ambiguous, which creates a fact issue on the parties' intent. *See id.*; *Diggs*, 2013 WL 3580424, at *10.

Although mother and father provide conflicting interpretations of the

---

response, Rule 38.3 permits an appellant to file a reply brief "addressing any matter in the appellee's brief," which is what occurred here. *See* Tex. R. App. P. 38.3.

meaning of "Per Temporary Orders: Expanded SPO," neither expressly argues that the terms of the MSA are ambiguous. The parties' failure to raise the issue of ambiguity is not determinative, however, because whether a contract is ambiguous is a question of law. *See Milner*, 361 S.W.3d at 619.

Viewing Exhibit A to the MSA in its entirety and in conjunction with the temporary orders of August 22, 2014, it is apparent that, under the MSA, father is entitled him to pick up the child at 3:00 p.m. during his periods of possession, and the parties are required to communicate with each other concerning the child's whereabouts during those periods as specified. The MSA also provides that father's periods of possession are those contained in the temporary orders' "Expanded SPO." Presumably, the "Expanded SPO" is a reference to the modified standard possession order contained in the temporary orders, which are applicable until the child reaches the age of three. On this record, however, we are unable to discern from the terms of the MSA or any other record evidence whether—as father argues—father's periods of possession under the modified standard possession order continue to apply after the child reaches the age of three, or—as mother argues—father's periods of possession return to a standard possession order after the child reaches the age of three as provided in the temporary orders.

Although conflicting interpretations alone do not establish ambiguity, *see id.* at 620, we conclude that the meaning of the phrase "Per Temporary Orders: Expanded SPO," is ambiguous because it is susceptible to more than one reasonable interpretation, creating a fact issue on the parties' intent. *See id.* at 622; *Diggs*, 2013 WL 3580424, at *11.

Father agrees that a "factual dispute" exists concerning what the parties intended by the term "Expanded SPO," and argues that, absent findings of fact and conclusions of law, this court must presume that the trial court resolved the dispute

in favor of the trial court's ruling on the final order. *See Aduli v. Aduli*, 368 S.W.3d 805, 813 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (stating that when a trial court does not issue findings of fact or conclusions of law, the appellate court presumes that all factual disputes were resolved in favor of the trial court's ruling). But the MSA provides that in the event of in the event of drafting disputes, issues regarding the interpretation of the MSA, or issues regarding the parties' intent as reflected in the MSA, the parties must submit to binding arbitration. Because we have concluded that a fact issue exists regarding the interpretation of the MSA and the parties' intent concerning father's periods of possession, the trial court erred by resolving the dispute and determining the periods of possession to be awarded to father. *See Milner*, 361 S.W.3d at 622; *Diggs*, 2013 WL 3580424, at *11. Consistent with the MSA, the parties should be ordered to return to mediator O'Neill for binding arbitration to resolve this dispute.

## CONCLUSION

We sustain mother's issue, reverse that portion of the trial court's agreed order of March 20, 2015 concerning Possession and Access, and remand the case for further proceedings consistent with this opinion. We affirm the remainder of the trial court's order.

/s/      Ken Wise
       Justice

Panel consists of Justices Busby, Donovan, and Wise.