# NO. 12-17-00402-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF K.A.M.,* | § | *APPEAL FROM THE 402ND* |
| *A CHILD* | § | *JUDICIAL DISTRICT COURT* |
| | § | *WOOD COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A.S. appeals from the trial court's final order in a suit affecting the parent-child relationship. On appeal, she presents one issue. We reverse and remand with instructions.

## BACKGROUND

A.S. and R.M. are the parents of K.A.M. On May 2, 2017, R.M. filed an original petition in suit affecting the parent-child relationship. In response, A.S. filed an original answer and counter-petition. Both parties sought to be appointed sole managing conservator of the child and requested issuance of temporary orders. After a contested temporary order hearing held on May 11, 2017, the trial court appointed both parents as temporary joint managing conservators of K.A.M., granted R.M. the exclusive right to designate the primary residence of the child, and granted A.S. supervised possession of the child. Pursuant to the trial court's order, the parties attended mediation, which took place on August 28, 2017, resulting in an agreement being reached on all disputed issues. A mediation settlement agreement ("MSA") was signed by R.M., A.S., their counsels, and the amicus attorney appointed to represent K.A.M. and was filed with the trial court on August 29, 2017.

Among other agreements, the parties agreed that the terms of the MSA would be incorporated in a decree/order and that R.M.'s counsel would prepare the documents. The MSA included a provision that stated:

6. *Disputes Regarding This Agreement*
   If any disputes arise with regard to the interpretation or performance of this agreement or any of its provisions, including the necessity and form of closing documents, the parties agree to try to resolve the dispute by phone conference with the mediator who facilitated this settlement. Any disputes regarding drafting shall be resolved whenever possible by reference to the *Texas Family Law Practice Manual* (3d ed.). Any disputes which remain unresolved shall be submitted to the mediator who facilitated this settlement who shall be designated as an arbitrator and shall decide such disputes, with such decision(s) being binding on the parties.

The MSA contained the parties' agreements as to conservatorship, possession, medical care, child support, and other matters involving the child. The MSA stated in underlined boldfaced type capital letters that "THIS AGREEMENT IS NOT SUBJECT TO REVOCATION." On August 31, 2017, a hearing was held for the court to approve the MSA. At the hearing, the trial court verbally approved the parties' agreements set forth in the MSA and directed R.M.'s counsel to prepare a final order to incorporate the agreements reached and set forth in the MSA.[1]

Soon thereafter, both parties sought to change the agreements reached at mediation. On September 8, 2017, eight days after the trial court approved the parties' MSA, R.M. filed a Petition to Modify the Parent-Child Relationship. In his petition, R.M. sought to modify a prior order identified as "Order in Suit Affecting the Parent-Child Relationship" rendered on August 31, 2017.[2] R.M. alleged that circumstances had materially and substantially changed since the parties entered into the MSA on August 28, 2017. He sought appointment as K.A.M.'s sole managing conservator and denial of A.S.'s access to K.A.M. In his supporting affidavit, R.M. stated that a sample of K.A.M.'s hair taken prior to the mediation but not analyzed until afterwards, revealed K.A.M. had been exposed to marijuana. R.M. claimed that the exposure occurred during A.S.'s possession of K.A.M. The trial court signed a temporary restraining order on September 8, 2017 prohibiting A.S. from having any possession of or access to K.A.M. On September 12, the trial court extended the temporary restraining order.

---

[1] At this "prove up" hearing, A.S.'s counsel presented a motion to withdraw from further representation of A.S., which A.S. agreed to. The trial court verbally granted the motion to withdraw with instructions to A.S.'s counsel to submit an order and instructed A.S. that she would need to retain new counsel to review the final order that R.M.'s counsel would prepare.

[2] The record before us does not contain any order entered on August 31, 2017. The Final Order, the subject of this appeal, was not entered until September 28, 2017.

2

On September 20, 2017, through new counsel, A.S. filed an answer and counter-petition in suit affecting the parent-child relationship.[3]  On September 27, she supplemented her counter-petition and filed an affidavit, in which she alleged that R.M. "most likely" drugged K.A.M. with marijuana, that the Texas Department of Family and Protective Services tested K.A.M. and her entire household, and that all the members of her household tested negative.  She also alleged that R.M. told her that he "has had sex with little girls."[4]

On September 28, 2017, the trial court held a hearing at which the court initially sought to enter the final order presented by R.M.'s counsel as a ministerial act based on representations that the proposed order was circulated among counsel, and counsel filed no objections. A.S.'s new counsel, who was appearing before the court for the first time, objected to the entry of the proposed final order on grounds that she was not provided a copy of the proposed order to review and object to.  A.S.'s counsel requested that entry of a final order be delayed to afford her time to thoroughly review and, if necessary, file formal objections to the proposed final order. R.M.'s counsel objected to any delays and requested the court sign the proposed final order. He argued that since the court had not yet entered a formal order allowing A.S.'s original counsel to withdraw, A.S.'s original counsel was still A.S.'s counsel of record.  According to R.M.'s counsel, A.S.'s original counsel reviewed the proposed order and submitted some proposed changes to the initial draft, that R.M.'s counsel made some changes, and that no objection to entry of the proposed final order was made by either A.S.'s original counsel or K.A.M.'s amicus counsel.[5]

The trial court allotted thirty minutes for A.S.'s new counsel to review the proposed final order.  When court reconvened, A.S.'s counsel stated that, although she received a limited time

---

[3] Contrary to the allegations in R.M.'s petition to modify, A.S.'s counter-petition was not labeled as a petition to modify and made no reference to the MSA or any prior order.  A.S.'s counter-petition sought for A.S. to be named sole managing conservator, that R.M. either be denied access to the child or only have supervised access, and that R.M. pay child support.  In her answer to R.M.'s petition, A.S. denied entry of an August 31, 2017 order, which R.M. sought to modify.

[4] The clerk's record does not include the pleadings filed on September 8, the resulting temporary restraining order, the September 12 restraining order, A.S.'s answer and counter-petition, or A.S.'s September 27 supplement to her counter-petition.  However, the pleadings were filed in a mandamus proceeding filed on January 23, 2018, cause number 12-18-00012-CV.  We take judicial notice of our record in that proceeding. *See Humphries v. Humphries*, 349 S.W.3d 817, 820 n.1 (Tex. App.—Tyler 2011, pet. denied).

[5] The record before us does not indicate that the trial court entered an order allowing A.S.'s original counsel to withdraw.  The reporter's record reflects only that A.S.'s new counsel appeared and there is nothing to indicate that A.S.'s original counsel was present at the hearing on September 28, 2017.

to review the proposed order, she had some "requested changes" which she then proceeded to present to the court. The trial court asked if A.S.'s counsel was not "splitting hairs," stating that it did not have the ability "to go around a [MSA]." After further discussions, the trial court announced its intent to sign the order as presented (hereinafter the "Final Order") and advised that A.S. could file a motion for new trial or motion to reconsider. The court announced that the hearing on entry of the final order was "over" and signed the order presented to him by R.M.'s counsel.[6]

After the court signed the Final Order, A.S.'s counsel advised the court that the matter of the entry of temporary orders based on the post mediation filings was still before the court. In response, the trial court addressed A.S.'s allegations against R.M., noting that the allegations "don't get any worse[]" and had not previously been raised. The trial court suggested that A.S. reconsider her affidavit or have "really, really good proof that the allegations you're making are absolutely 100 percent true." After further discussions, the trial judge advised that he intended to sign "this order" and directed that A.S. only have supervised access to K.A.M.[7]

On October 10, 2017, A.S. filed an objection to entry of the Final Order and motion for reconsideration, and a motion for new trial. In her objection, A.S.'s counsel pointed out nine "discrepancies" between the Final Order and the MSA that, she said, necessitated the trial court to set aside the judgment. The objections included complaints that the Final Order:

(1) granted R.M. the exclusive right to "consent" to medical, dental, surgical care, and psychiatric and psychological care of K.A.M. while the MSA granted R.M. the exclusive right to "designate" the medical care, including psychological care, of the child;

(2) granted R.M. the exclusive right to receive and give receipt for periodic payments of child support when the MSA stated that neither party was to pay child support;

(3) failed to provide for week-on/week-off possession of K.A.M. during the summer after the child began school, but instead, included language for expanded summer possession of the child by A.S.;

(4) provided for A.S. to exchange possession of K.A.M. at R.M.'s mother's house even though there was no such agreement in the MSA; and

(5) did not provide an exception to the "morality clause" for persons to whom the party in

---

[6] Neither A.S.'s original counsel nor her substituted counsel signed off on the proposed final order.

[7] The record before us does not indicate that any order other than the Final Order was signed and entered on September 28, 2017.

possession of the child are related by blood or marriage with the exception of A.S.'s husband.

In his response, R.M. conceded certain points raised by A.S., but stated that most of the issues with the Final Order should be decided by the mediator as required by the MSA.

On October 12, 2017, the court signed an order entitled "Temporary Orders" which directed that all A.S.'s access to the child "shall" take place in a therapeutic setting at the offices of Pennye West, LPC.[8]

On October 26, at the hearing on A.S.'s motion for new trial and objection to entry of the Final Order, the trial court asked A.S.'s counsel why her objections to discrepancies between the MSA and the Final Order were not being presented to the mediator under the MSA's arbitration provision. Without responding to the court's inquiry, A.S.'s counsel asked whether the court was denying her motions. In response, the trial court stated, "So if you want to say I denied it, I've denied the whole thing. It needs to go back to Jim McLeroy and be finalized and brought back." A.S. then appealed to this Court.[9]

## MEDIATED SETTLEMENT AGREEMENT

In her sole issue, A.S. argues that the trial court erred in denying or refusing to rule on her objections to the Final Order because the order did not accurately reflect the MSA. She requests this Court reverse the Final Order and remand this case for entry of a new final order.

---

[8] The clerk's record does not include the orders filed by the trial court on October 12 or October 19. However, the pleadings were filed in a mandamus proceeding filed on January 23, 2018, cause number 12-18-00012-CV. We take judicial notice of our record in that proceeding. *See Humphries*, 349 S.W.3d at 820 n.1. The action taken by the trial court as to the oral pronouncements restricting A.S.'s access to the child, effective September 28, 2017, and entry of the orders on October 12 and 19 respectively, were the subject of that action.

[9] A.S. filed a petition for writ of mandamus on January 23, 2018, challenging the trial court's October 19, 2017, temporary order. We conditionally granted the writ on February 21, 2018. *See In re K.M.*, No. 12-18-00012-CV, 2018 WL 991570, at *5 (Tex. App.—Tyler Feb. 21, 2018, orig. proceeding) (mem. op.). Subsequently, R.M. filed an amended petition to modify the parent-child relationship on February 23, 2018. He requested a new temporary restraining order on grounds that circumstances of the child, a conservator, or other party affected by the order to be modified materially and substantially changed since the signing of the MSA. In support, he attached the affidavit of Pennye West. That same day, the trial court signed a temporary restraining order that immediately restrained A.S. from any possession of or access to K.A.M. except in a therapeutic setting in West's offices. A.S. filed a petition for writ of mandamus on February 28, challenging the trial court's February 23 temporary restraining order. We denied that petition after determining that A.S. failed to establish an abuse of discretion and, consequently, an entitlement to mandamus relief. *See In re K.M.*, No. 12-18-00044-CV, 2018 WL 1837029, at *5 (Tex. App.—Tyler Apr. 18, 2018, orig. proceeding) (mem. op.). Further, we withdrew our opinion and judgment of February 21, 2018 in cause number 12-18-00012-CV, and substituted an opinion in which we denied the petition as moot since signing of the February 23, 2018 temporary order. *See In re K.M.*, No. 12-18-00012-CV, 2018 WL 1835923, at *2–3 (Tex. App.—Tyler Apr. 18, 2018, orig. proceeding) (mem. op.).

R.M. responds that we should affirm the Final Order because A.S. did not seek arbitration to resolve her objections as required by the MSA or alternatively, the case should be remanded to the trial court with instructions to refer the case to arbitration with the mediator regarding A.S.'s objections.[10]

**Applicable Law**

A mediated settlement agreement is binding on the parties if the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

*See* TEX. FAM. CODE ANN. § 153.0071(d) (West Supp. 2017). If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law. *See id.* § 153.0071(e). A final judgment rendered pursuant to a mediated settlement agreement must be in strict or literal compliance with that agreement. ***Vickrey v. Am. Youth Camps, Inc.***, 532 S.W.2d 292, 292 (Tex. 1976). The trial court has no power to supply terms, provisions, or conditions not previously agreed to by the parties. ***Keim v. Anderson***, 943 S.W.2d 938, 946 (Tex. App.—El Paso 1997, no writ). Modifications to settlement agreements are typically grounds for reversal, however, only where they add terms, significantly alter the original terms, or undermine the intent of the parties. ***Beyers v. Roberts***, 199 S.W.3d 354, 362 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Nonetheless, in rendering judgment on an MSA, trial courts may include terms necessary to effectuate and implement the parties' agreement, so long as they do not substantively alter it. ***In re Lee***, 411 S.W.3d 445, 458 n.17 (Tex. 2013).

**Analysis**

We acknowledge that the history of this case presents a procedural "peculiarity." A.S. filed two writs of mandamus in January and February 2018, to challenge temporary orders issued

---

[10] Here, the parties do not contest that the MSA is valid or that they are entitled to a judgment on the MSA. *See* TEX. FAM. CODE ANN. § 153.0071(e).

by the trial court after the signing of the MSA, which changed her access to K.A.M. as agreed upon by the parties in the MSA. Even though the possession of and access to the child has been changed through these temporary orders, the limited scope of the appeal before us is to determine whether the trial court erred in denying A.S.'s motion for new trial and objections to entry of the Final Order. In doing so, we first examine whether there are discrepancies between the Final Order and the MSA.

In her brief, A.S. argues that the MSA and the Final Order differed in at least five ways by either using different terminology or adding and subtracting language. She contends that the MSA stated that R.M. would have the "additional exclusive right to *designate* medical care, including psych[ological] care." However, the Final Order granted R.M. the exclusive right to *consent* to medical, dental, surgical treatment, and psychiatric and psychological treatment of K.A.M.

We apply the rules of contract interpretation to the MSA. *See Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012); *In re L.T.H.*, 502 S.W.3d 338, 346 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Whether a contract is ambiguous is a question of law. *Milner*, 361 S.W.3d at 619. If the agreement's language can be given a certain and definite meaning, the agreement is not ambiguous, and the contract's construction is a matter for the court. *Id.* But if the agreement is susceptible to more than one reasonable interpretation, the agreement is ambiguous, creating a fact issue on the parties' intent. *Id.*

Here, the terms regarding K.A.M.'s medical care used in the MSA and the Final Order are different. To designate medical care could mean to "[t]o indicate or specify; point out," or "[t]o select and set aside for a duty, an office, or a purpose." *See* THE AMERICAN HERITAGE COLLEGE DICTIONARY 376 (3d ed. 1993). However, consent could mean "[t]o give assent, as to the proposal of another; agree," or "[a]cceptance or approval of what is planned or done by another; acquiescence." *Id.* at 296. These terms are not equivalent and there is more than one reasonable interpretation between being the parent with the exclusive right to *designate* the child's medical care from being the parent with the exclusive right to *consent* to her medical care.[11] Because there is a fact question regarding the parties' intent as to the child's medical care,

---

[11] On December 10, 2017, the arbitrator made a decision on three disputed terms in the MSA and filed his decision in a letter to the amicus attorney and both parties. Part of the arbitrator's decision included the differences, if any, between "designate" and "consent" in the MSA and the Final Order. Further, he made a determination regarding the proposed summer schedule and e-cigarettes. However, the remainder of A.S.'s alleged disputes

the trial court should not have, in effect, resolved the disputed interpretation by denying A.S.'s motion for new trial and objections to the final order.

The trial court held the language in the MSA required that the parties should arbitrate their differences and directed the parties to do so.[12] We agree that the language in the MSA mandated that "[a]ny disputes aris[ing] with regard to the interpretation or performance of this agreement or any of its provisions, including the necessity and form of closing documents . . . shall be submitted to the mediator who facilitated this agreement who shall be designated as an arbitrator." "The essence of arbitration is a contractual commitment to have someone—other than a judge—decide a dispute." *In re M.W.M., Jr.*, 523 S.W.3d 203, 207 (Tex. App.—Dallas 2017, orig. proceeding) (op.); *see In re Lauriette*, No. 05–15–00518–CV, 2015 WL 4967233, at *4 (Tex. App.—Dallas Aug. 20, 2015, orig. proceeding) (mem. op.) ("When parties enter into a valid agreement to arbitrate, the parties have agreed that the arbitrator and not the trial court or a jury will be the trier of fact for the disputed issue subject to the arbitration provision. []In that situation, the trial court has no authority to decide the issue that is subject to the arbitration provision." (citations omitted)). A strong presumption favors arbitration, and courts resolve any doubts about an agreement's "scope, waiver, and other issues unrelated to its validity in favor of arbitration." *BBVA Compass Inv. Sols. v. Brooks*, 456 S.W.3d 711, 718 (Tex. App.—Fort Worth 2015, no pet.). If an arbitration agreement encompasses a dispute and the party opposing arbitration does not prove a defense, the trial court has "no discretion but to compel arbitration and stay its own proceedings." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding); *see Diggs v. Diggs*, No. 14-11-00854-CV, 2013 WL 3580424, at *11 (Tex. App.–Houston [14th Dist.] July 11, 2013, no pet.) (mem. op.) (enforcing the terms of an MSA by returning the parties for arbitration before a mediator); *see also Brand FX, LLC v. Rhine*, 458

---

between the MSA and the Final Order were not considered or mentioned in the arbitrator's letter. The clerk's record does not include the arbitrator's decision on December 10, 2017. However, the decision was filed in a mandamus proceeding filed on February 28, 2018, cause number 12-18-00044-CV. We take judicial notice of our record in that proceeding. *See Humphries*, 349 S.W.3d at 820 n.1.

[12] R.M. stated in his brief that in December 2017, the mediator arbitrated A.S.'s objections to the Final Order. He stated that he filed the proposed amended final order, incorporating the arbitrated changes, with the trial court and attached a copy of that proposed order to his brief. However, the proposed amended final order does not appear in the clerk's record in this case. We may not consider documents that are cited in the brief and attached as appendices if they are not formally included in the record on appeal. *See Green v. Kaposta*, 152 S.W.3d 839, 841 (Tex. App.—Dallas 2005, no pet.).

S.W.3d 195, 204 (Tex. App.–Fort Worth 2015, no pet.) ("[A] trial court that refuses to compel arbitration under a valid and enforceable arbitration agreement has abused its discretion.").

In this case, there is at least one dispute regarding the interpretation of language between the MSA and the Final Order that triggers the arbitration provision in the MSA. Thus, once the trial court became aware of a discrepancy between the MSA and the Final Order, it should have ordered the parties to arbitration by the mediator as agreed to by the parties in the MSA. Even assuming the court believed there was no disparity between the MSA and Final Order, the trial court had sufficient reason to believe one or more discrepancies existed by mere virtue of R.M.'s counsel conceding some of the points raised by A.S. Thus, disputes between the MSA and the Final Order were made known to the court that required it to grant a new trial as to the Final Order and order the parties to arbitration with the mediator. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d at 754**; *Diggs*,** 2013 WL 3580424 at *11. While the trial court challenged A.S.'s failure to consult the mediator prior to the October 26 hearing and was apparently frustrated with that failure, it did not grant A.S.'s motion for new trial and withdraw the Final Order.[13] The trial court did not have the authority to, in effect, resolve the parties' dispute and decide the issues of interpretation by denying A.S.'s motion for new trial and leaving a final order with known discrepancies in place. *See Milner*, 361 S.W.3d at 622; *In re L.T.H.*, 502 S.W.3d at 345; *In re Lauriette*, 2015 WL 4967233, at *4. Regardless of A.S.'s failure to comply with the arbitration provisions of the MSA, the trial court had no other option than to grant the motion for new trial. Therefore, the trial court erred in denying A.S.'s motion for new trial. A.S.'s sole issue is sustained.

Because of the unique procedural history of this case and our ruling reversing the Final Order, we instruct the trial court to order the parties to arbitration with the mediator regarding all of the disputed terms between the MSA, as identified in A.S.'s formal objections, and the Final Order. After the arbitrator makes his decision, the trial court, on application of a party, shall confirm the award "[u]nless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091" of the Texas Arbitration Act. *See* TEX. CIV. PRAC. & REM.

---

[13] Moreover, once the trial court became aware of a dispute between the MSA and the Final Order, it should have ordered the parties to arbitration with the mediator and stayed its own proceedings. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d 754.

CODE ANN. § 171.087 (West 2011).[14] In other words, the trial court shall confirm the arbitrator's award in a final judgment, including the determination of all of the disputed items identified by A.S. in her objections.

### CONCLUSION

For reasons set forth above, we have concluded that the trial court erred by denying A.S.'s motion for new trial. We therefore ***reverse*** the final order in suit affecting the parent-child relationship dated September 28, 2017, and ***remand*** the case for further proceedings consistent with this opinion and this Court's instructions.[15]

**GREG NEELEY**
Justice

Opinion delivered August 8, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[14] The Texas Arbitration Act applies to an arbitration if the arbitration is binding. *See **In re Cartwright**,* 104 S.W.3d 706, 711 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.053-.054, 171.081, 171.087-.092 (West 2011).

[15] We are aware by virtue of the mandamus proceedings filed in this case that matters have progressed far beyond entering a final order accurately setting forth the agreements reached in the MSA. However, the focus of this appeal was to determine if discrepancies existed between the MSA and Final Order. Assuming, on remand, a final order is entered in compliance with the MSA, whether either party satisfies the burden necessary to obtain modification of the Final Order is unaffected by either the entry of a new final order consistent with this opinion or any subsequent appeal from the trial court's rulings on modification of the agreements in the MSA.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 8, 2018**

**NO. 12-17-00402-CV**

**IN THE INTEREST OF K.A.M., A CHILD**

Appeal from the 402nd District Court
of Wood County, Texas (Tr.Ct.No. 2017-269)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the order of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the order denying A.S.'s motion for new trial be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this court; all costs in both this Court and the court below are hereby assessed against the party incurring the same, for all of which execution may issue; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*