**Reversed and Remanded and Memorandum Opinion filed January 11, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00950-CV

---

## ERIC STEPHEN TAMEZ, Appellant

## V.

## SUZANNE RENEE TAMEZ, Appellee

---

**On Appeal from the 306th District Court
Galveston County, Texas
Trial Court Cause No. 20-FD-2512**

---

## M E M O R A N D U M   O P I N I O N

Appellant Eric Stephen Tamez ("Father") appeals the trial court's final divorce decree and contends the trial court abused its discretion when it did not enter judgment based on a mediated settlement agreement signed by Father and appellee Suzanne Renee Tamez ("Mother"). For the reasons below, we reverse the trial court's final divorce decree and remand for further proceedings.

## BACKGROUND

Mother and Father married in 2011 and had two children before they separated in 2020. After their separation, Mother moved to Galveston County and Father moved to Ellis County. Mother filed for divorce in Galveston County and Father filed a counter-petition.

Mother and Father signed a mediated settlement agreement in October 2021, which provided that they would "remain joint managing conservators with mother having the right to determine the primary residence of the children." In relevant part, the agreement states as follows with respect to Father's possession:

Father's periods of possession will be as follows:

a.  A standard possession order[1], and the parties understand and agree that if father lives within 50 miles of the children it will be an expanded SPO.

b.  So long as father lives in his current county and the children reside in Galveston or contiguous counties then exchanges will occur at the McDonald's restaurant at the intersection of I45 and 190 in Huntsville, Texas.[2] If father and mother reside in the same county, then exchanges will be pursuant to standard SPO language, and if the parties reside in the same county and then mother moves to a different county, then the parties will agree upon a mutual place to exchange the children.

c.  So long as the parties are exchanging the children in Huntsville, the pick-up time for father will be 8:00 p.m. and the drop-off time for father will be 5:00 p.m.

In December 2021, the trial court held a hearing to enter judgment on the mediated

---

[1] *See* Tex. Fam. Code Ann. § 153.313. Pursuant to the standard possession order, Father would be entitled to possession of the children on the first, third, and fifth weekends of the month. *See id*. § 153.313(1).

[2] Huntsville, Texas is approximately halfway between Ellis and Galveston Counties.

settlement agreement. At the hearing, Mother's attorney asserted that subsection (b) addressing Father's periods of possession was meant to state that Mother and Father would meet in Huntsville only once a month rather than for all exchanges of the children. Responding to this contention, Father's attorney argued this provision in the agreement is "exactly what [Father] was wanting to get specifically with respect to where they are meeting to pick up their children."

Resolving this dispute, the trial court reasoned that "there was a failure to meet of the minds . . . with regard to long distance exchange." The trial court ruled that Mother would have to meet Father in Huntsville to exchange the children only once a month. For the other weekends of Father's possession, he alone would be responsible for transportation.

The trial court signed a final divorce decree on September 30, 2022. The final divorce decree incorporates a standard possession order which provides that, because Mother and Father live more than 100 miles apart, Father would be entitled to possession of the children on weekends beginning on the first, third, and fifth Friday of each month. The divorce decree also incorporates the trial court's oral ruling with respect to the dispute regarding the children's pick-up location:

> So long as [Father] lives in his current county of Ellis and the children reside in Galveston County or contiguous counties thereto, the exchange will occur at the McDonald's Restaurant at the intersection of I-45 and 190 in Huntsville, Texas, **once per month, upon the monthly notice** from [Father] to [Mother] **via Our Family Wizard or email, by the 15th of the previous month**, designating the weekend selected (1st, 3rd, or 5th) when [Father] will see the children, and [Mother] will meet him in Huntsville, Texas, (preferably on a three-day weekend). (**On the other weekends** of the month remaining after the monthly selection, [Father] will pick up and return the children at the residence of [Mother]).

(emphasis in original). Father timely filed this appeal.

3

In a single issue, Father asserts the trial court erred by entering a final order that "limits the number of times the parties will exchange the children in Huntsville, Texas" because it varies the terms of the mediated settlement agreement. We agree.

Texas has a policy encouraging "the peaceable resolution of disputes" — especially disputes involving a parent-child relationship. *In re Lee*, 411 S.W.3d 445, 447 (Tex. 2013) (orig. proceeding); *In re A.D.B.*, 640 S.W.3d 604, 609 (Tex. App.—Houston [14th Dist.] 2022, no pet.). In furtherance of this policy, a trial court may refer a suit affecting the parent-child relationship to mediation and, if a mediated settlement agreement is reached, must enter judgment on the agreement without inquiry into whether it is in the best interest of a child. *See* Tex. Fam. Code Ann. § 153.0071(c)-(e); *In re Lee*, 411 S.W.3d at 447.

Under section 153.0071, a mediated settlement agreement is binding on the parties to it if the agreement (1) "provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation"; (2) "is signed by each party to the agreement"; and (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed." *See* Tex. Fam. Code Ann. § 153.0071(d). However, section 153.0071(e-1) provides that a court may decline to enter judgment on a mediated settlement agreement if the court finds that (1) a party to the agreement was a victim of family violence; (2) that circumstance impaired the party's ability to make decisions; and (3) the agreement is not in the child's best interest. *Id*. § 153.0071(e-1). "For this narrow exception to apply, all three requirements must be found by the trial court." *In re A.D.B.*, 640 S.W.3d at 610.

Otherwise, if a mediated settlement agreement meets the requirements of section 153.0071(d), a party is entitled to judgment on the agreement and a trial court generally lacks any discretion to decline to enter judgment on or deviate from the agreement's terms. *In re Lee*, 411 S.W.3d at 451; *In re A.D.B.*, 640 S.W.3d at 610. However, the trial court "may include terms necessary to effectuate and implement the parties' agreement, so long as they do not substantially alter it." *In re L.T.H.*, 502 S.W.3d 338, 345 (Tex. App.—Houston [14th Dist.] 2016, no pet.). We review *de novo* whether a mediated settlement agreement complies with statutory requirements. *In re A.D.B.*, 640 S.W.3d at 610.

Since a mediated settlement agreement is a contract, general principles of contract interpretation apply to ascertain its meaning. *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017). We give terms their plain, ordinary, and generally accepted meanings unless the agreement shows that the parties used them in a technical or different sense. *Id*.

Here, Mother's and Father's mediated settlement agreement complied with the requirements of section 153.0071(d) as necessary to render it binding on the parties. *See* Tex. Fam. Code Ann. § 153.0071(d). Specifically, the second page of the agreement states, "**This agreement is not subject to revocation, pursuant to 6.602 and 153.0071, Texas Family Code. THIS AGREEMENT IS BINDING.**" (emphasis in original). The agreement also is signed by Mother and Father and their respective attorneys. Mother did not argue in the trial court or on appeal that the agreement is unenforceable under section 153.0071(e-1) because of family violence. *See id*. § 153.0071(e-1). Therefore, Father was entitled to a judgment on the mediated settlement agreement that fully incorporated the agreement's terms. *See In re Lee*, 411 S.W.3d at 451; *In re A.D.B.*, 640 S.W.3d at 610.

But the trial court's final divorce decree impermissibly altered the terms of

5

the mediated settlement agreement by modifying the provision governing when the parties would meet in Huntsville to exchange the children. Under the plain language of the mediated settlement agreement, Father's possession would be in accordance with a standard possession order, which meant that Father would be entitled to possession of the children on the first, third, and fifth weekend of every month. *See* Tex. Fam. Code Ann. § 153.313(1). Continuing on, the agreement states that, as long as Mother, Father, and the children live in their current locations, "exchanges will occur at the McDonald's restaurant at the intersection of I45 and 190 in Huntsville, Texas."

But rather than incorporating these terms, the trial court's final divorce decree states that Mother and Father will meet in Huntsville to exchange the children only "**once per month**" and, "**[o]n the other weekends**," Father will pick up and return the children at Mother's residence. (emphasis in original). This constitutes an impermissible deviation from the terms of the mediated settlement agreement, which provides that ***all*** exchanges will occur in Huntsville. *See In re Lee*, 411 S.W.3d at 451; *In re A.D.B.*, 640 S.W.3d at 610. The trial court therefore abused its discretion when it failed to enter judgment on the parties' mediated settlement agreement. *See* Tex. Fam. Code Ann. § 153.0071(d).

We sustain Father's sole issue on appeal.

## CONCLUSION

We reverse the trial court's final divorce decree and remand the case to the trial court to enter an order in accordance with this court's opinion.

6

/s/    Meagan Hassan
Justice

Panel consists of Justices Hassan, Poissant, and Wilson.