COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

CLAUDIA SUSANA MARTINEZ                  No. 08-17-00183-CV
JARDON,                              §

          Appellant,              Appeal from the

§

v.                                        65th District Court

§

GERD PFISTER,                             of El Paso County, Texas

          Appellee.           §

(TC# 2013DCM4404)

## **O P I N I O N**

This is an appeal from a final decree of divorce between Appellant Claudia Susana Martinez Jardon ("Mother") and Appellee Gerd Pfister ("Father"). Mother raises twenty issues, challenging the trial court's determinations concerning the best interest of the couple's minor child, A.E.P., the division of community property, and the award of attorney's fees. Mother also challenges certain procedural aspects of the case in the court below. We affirm in part and reverse and remand in part.

## **BACKGROUND**

Mother and Father were married in 2004 and had one child, A.E.P. In June 2013, Mother filed this suit for divorce in the 65th District Court of El Paso County. In her original petition, she requested that she be named sole managing conservator of the child, that Father be ordered to pay child support, that the court order Father to execute a bond because of the possibility that he would

violate court orders relating to possession, and that the court take further measures to protect the child because of a risk of international abduction by Father. Mother also requested that Father be enjoined from removing A.E.P. from El Paso County, Texas.

Father filed a counterpetition, requesting that the parties be named joint managing conservators, that he be named the person with the exclusive right to designate the child's primary residence (restricted to El Paso County, Texas), and that Mother be ordered to pay child support. Father later amended his counterpetition to add claims for breach of fiduciary duty, fraud, waste of assets, fraudulent transfer, and civil conspiracy. Mother nonsuited her petition before the final hearing.

In early 2014, the parties entered into a mediated settlement agreement under which they agreed to share possession of the child. That agreement was reduced to temporary orders in February 2015. Father testified at trial that, despite the parties' agreement, Mother abducted the child to Mexico and has since refused to divulge his whereabouts or to permit Father to have any access to or contact with him. Mother has also refused to comply with court orders to reveal the child's whereabouts and to return him to the Texas court. Instead, she initiated legal proceedings in Mexico to obtain custody of the child.

Father also testified concerning the value of the couple's community property, including properties located in Mexico, and introduced exhibit P-2 as a summary of those values. He asked that the Mexico properties be awarded to Mother, but that he be granted judgment for half of the value of the community property, secured by liens on the properties awarded to Mother.

The only other testimony presented at trial was the unsworn testimony of Father's attorney relating to the issue of attorney's fees. Mother appeared at trial only through her attorney and did not offer any evidence.

At the close of trial, the court issued its ruling naming Father sole managing conservator of A.E.P., restricting the child's residence to El Paso County, Texas, requiring Mother to execute a $400,000 bond to offset the cost of obtaining the child's return following international abduction by her, requiring Mother to execute a $200,000 bond conditioned on compliance with the court's possession orders, and ordering Mother to pay child support of $1,710, beginning on May 1, 2017. As to the division of property, the court accepted the values stated in exhibit P-2, and awarded the Mexico properties to Mother. The court awarded Father a judgment in the amount of one-half of the value stated in exhibit P-2, secured by a lien on the Mexico properties. Finally, the court awarded Father attorney's fees in the amount of $206,492.09. Each of these rulings was incorporated into the court's Final Decree.

Mother filed a request for findings of fact and conclusions of law and a notice of past due findings of fact and conclusions of law. The trial court signed findings of fact and conclusions of law outside the time specified by the Texas Rules of Civil Procedure, but before Mother perfected her appeal.

**ISSUES**

Mother raises twenty issues on appeal, which can be roughly grouped into the following four categories:

**A. Procedural Issues**: This category includes: (a) the effect of the parties' mediated settlement agreement; (b) the effect of late-filed findings of fact and conclusions of law; (c) the effect of findings stated in the Final Decree; (d) judgment not conforming to the pleadings; and (e) the imposition of death penalty sanctions.

**B.** __Child-Related Issues__:  This category includes: (a) the trial court's appointment of Father as sole managing conservator; (b) ordering Mother to pay child support; and (c) ordering Mother to execute two compliance bonds.

**C.** __Property Division__: This category includes issues pertaining to the division of community property, including (a) the admission of Father's testimony and exhibit P-2 concerning property values; (b) the sufficiency of the evidence to value the community property; (c) adjudication of title to property in Mexico; and (d) ordering Mother to execute documents necessary for Father to obtain liens on the property in Mexico.

**D.** __Attorney's Fees__: This category groups issues concerning the trial court's award of attorney's fees, including (a) the effect of unsworn testimony by Father's attorney; (b) awarding expenses incurred in hiring Mexico attorneys; and (c) the sufficiency of the attorney's fee evidence.

We will discuss each category in turn.

## STANDARD OF REVIEW

Most appealable issues in a family law case, including property division, conservatorship, and child support, are reviewed under the abuse of discretion standard.  *Richardson v. Richardson*, 424 S.W.3d 691, 695 (Tex. App.—El Paso 2014, no pet.); *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (determination of best interest of child "will be reversed only when it appears from the record as a whole that the court has abused its discretion"); *In re J.M.M.*, 549 S.W.3d 293, 298–99 (Tex. App.—El Paso 2018, no pet.) (order granting child support is reviewed for abuse of discretion).  Moreover, a trial court's decision to admit evidence is reviewed under the abuse of discretion standard.  *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *Villanova v. Fed. Deposit Ins. Corp.*, 511 S.W.3d 88, 94 (Tex. App.—El Paso 2014, no

4

pet.). This standard of review also applies to an award of attorney's fees. *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 319 (Tex. App.—El Paso 2010, pet. denied). Finally, imposition of discovery sanctions is likewise reviewed for abuse of discretion. *McCollum v. The Bank of New York Mellon Tr. Co*., 481 S.W.3d 352, 357 (Tex. App.—El Paso 2015, no pet.). "A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding rules and principles." *Villanova*, 511 S.W.3d at 94 (citing *Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 241–42 (Tex. 1985)).

In each of these contexts, determining whether the trial court abused its discretion involves a two-pronged inquiry: (1) did the trial court have sufficient information upon which to exercise its discretion? and (2) did the trial court err in its application of discretion? *In re M.V.*, 583 S.W.3d 354, 361 (Tex. App.—El Paso 2019, no pet.); *In re T.M.P*., 417 S.W.3d 557, 562 (Tex. App.—El Paso 2013, no pet.); *Sara Care*, 324 S.W.3d at 319. Sufficiency challenges are considered as factors relevant to whether the trial court abused its discretion rather than independent grounds of error. *In re M.V.*, 583 S.W.3d at 361; *In re T.M.P*., 417 S.W.3d at 563. Whether there is legally sufficient evidence is determined by viewing the evidence in the light favorable to the trial court's decision, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). If there is evidence of a substantive and probative character supporting a trial court's decision, we cannot conclude that the court abused its discretion in reaching that decision. *In re M.V.*, 583 S.W.3d at 361.

## DISCUSSION

### A. Procedural Issues

#### 1. Briefing Deficiencies and Error Preservation

As a preliminary matter, Father contends that all but one of Mother's issues are waived because her arguments on those issues do not include appropriate citations to the record. *See* TEX. R. APP. P. 38.1(i). The supreme court has recognized that "[f]ailure to provide citations or argument and analysis as to an appellate issue may waive it." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015). But that court has also instructed the courts of appeals "to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule." *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 n.15 (Tex. 2004) (quoting *Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex. 1997)).

Mother responds that Rule 38.1 requires citations to the record only in support of the statement of facts portion of her brief. Mother is mistaken. The rule clearly states: "*Argument.* The brief must contain a clear and concise argument for the contentions made, *with appropriate citations* to authorities and *to the record*." TEX. R. APP. P. 38.1(i) (emphasis added). Mother's brief does not comply with this requirement.[1]

Despite the deficiencies in Mother's brief, we heed the instruction of the supreme court and conclude that it is not absolutely necessary in this case to strictly enforce the rules relating to briefing requirements. *See Mex-Tex*, 150 S.W.3d at 427; *Verburgt*, 959 S.W.2d at 616–17. We decline to hold that Mother's issues on appeal are waived by her failure to comply with Rule 38.1.

---

[1] Mother's brief also fails to comply with the requirement of Rule 38.1(g) that the statement of facts portion of the brief "state concisely and without argument the facts pertinent to the issues or points presented." TEX. R. APP. P. 38.1(g). Mother's opening brief contains approximately 24 pages of direct-quotation excerpts from the record, as well as a recitation of accusations against Father made in a bill of exception, which has no bearing on any of the issues presented on appeal.

6

Father also contends that many of Mother's issues are not preserved for review because she did not make timely, appropriate objections in the trial court. *See* TEX. R. APP. P. 33.1. We will address preservation of error below in the context of the issues in which the matter is raised.

### 2. Effect of the Parties' Mediated Settlement Agreement

In Issue One, Mother complains that the trial court abused its discretion by refusing to enter final judgment on the parties' mediated settlement agreement ("MSA"). The Texas Family Code provides that a MSA in a suit affecting the parent-child relationship is binding on the parties if it:

> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
>
> (2) is signed by each party to the agreement; and
>
> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

TEX. FAM. CODE ANN. § 153.0071(d).[2] If the agreement meets these requirements, "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Id.* at § 153.0071(e).

On review, we conclude that the MSA in this instance meets all requirements of Section 153.0071(d). Mother complains, however, that the Final Decree does not comport with the terms of the MSA, particularly in that it appoints Father sole managing conservator of A.E.P. rather than naming both parties as joint managing conservators as provided by the MSA terms. By failing to comport the Final Decree with the parties' MSA, Mother asserts that the trial court committed reversible error under the Texas Supreme Court's decision in *In re Lee*, 411 S.W.3d 445 (Tex. 2013).

---

[2] Mother contends that the MSA also falls within Section 6.602 of the Texas Family Code. But that section applies to property division agreements; Section 153.0071 applies to agreements in suits affecting the parent-child relationship. *In re L.T.H.*, 502 S.W.3d 338, 344 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The MSA here at issue concerns only the parent-child relationship and is therefore governed by Section 153.0071 rather than Section 6.602. *See id.*

In *In re Lee*, the Court considered "whether a trial court presented with a request for entry of judgment on a validly executed MSA may deny a motion to enter judgment based on a best interest inquiry." *Id.* at 450. As to that inquiry, the supreme court held that it may not. *Id.* at 454-55. However, the procedural context of *In re Lee* is distinguishable.

The father in *In re Lee* appeared before an associate judge to prove up the parties' MSA, but the associate judge refused to enter judgment because the mother's husband was a registered sex offender and was alleged to have acted inappropriately with the child. *Id.* at 447-48. The mother then filed a motion with the district court requesting that the court enter judgment on the MSA. *Id.* at 448. The father objected on the ground that the MSA was not in the best interest of the child. The trial court agreed and refused to enter judgment on the MSA. *Id.*

The first, and most crucial, distinction between *In re Lee* and the present case is that Mother did not make any request to the trial court to enter judgment on the MSA, nor did she object to the fact that the Final Decree does not comport with the MSA. While Section 153.0071(e) provides that a party is entitled to judgment on an MSA, it does not make such a judgment automatic. *See* TEX. FAM. CODE ANN. § 153.0071(d), (e). Mother has not presented any authority establishing that a trial court has a duty to enter judgment on an MSA in the absence of any request to do so. We are precluded from addressing on appeal any asserted error that was not properly preserved in the trial court by timely bringing the complaint to the trial court's attention and obtaining an adverse ruling. *See* TEX. R. APP. P. 33.1. We thus conclude that Mother's first issue is waived.

In the alternative, we further conclude that Mother's first issue fails on the merits because of an additional distinction between the record of this case and *In re Lee*. Specifically, unlike in *In re Lee*, the trial court here did not refuse to give effect to the MSA. Rather, the procedural posture of this case is far different and more akin to that presented in *In re Harrison*, 557 S.W.3d

99 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The trial court in *In re Harrison* incorporated the parties' MSA into interim orders, under which the parties shared custody of their children. *Id.* at 139. After the MSA was signed and the interim orders were entered, events occurred that constituted a material and substantial change of circumstances such that the terms of the MSA were no longer consistent with the children's welfare. *Id.* The trial court thereafter modified the terms of the interim orders based on those changed circumstances and its finding that the modification was in the children's best interest. *Id.* The *In re Harrison* court of appeals determined that these facts rendered that case "fundamentally different" than *In re Lee*. *Id.* at 138. The same is true of the case before us.

The parties here entered an MSA and shared custody of A.E.P. for a period thereafter. The trial court later incorporated the MSA into temporary orders. Mother then violated those orders by abducting A.E.P. to Mexico and secreting him there. Father moved to modify the temporary orders based on a material change of circumstances affecting the child. In its order granting that motion, the trial court found a material change of circumstances, being that, after the MSA was signed and the temporary orders were entered, Mother wrongfully removed the child from El Paso County for the purpose of changing his residence, wrongfully took the child to Mexico and has hidden his whereabouts, and has continuously defied and violated orders of the court. Based on those findings of changed circumstances, which Mother does not contest, the court awarded Father full custody of A.E.P. and appointed him sole managing conservator. Those modified terms were thereafter incorporated into the Final Decree.

As in *In re Harrison*, the trial court in this case gave effect to the terms of the parties' MSA until such time as one party substantially and repeatedly violated those terms. *See* 557 S.W.3d at 139. The court then modified those terms in light of the materially changed circumstances. These

9

facts render *In re Lee* inapplicable. Most particularly, "[t]he challenged order in *Lee* was not based on allegations or evidence that a party violated MSA terms that the party simultaneously sought to enforce." *Id.* at 139. And our record "does not show that the trial court denied a motion to enter judgment on the MSA based on a broad best interest inquiry." *Id.* at 140. Further, Mother "has not shown that, once the trial court issued orders incorporating the MSA, it lacked authority to modify those orders on [Father's] motion based on events occurring after the MSA and further temporary orders were signed." *Id.*

We conclude that this case is not governed by *In re Lee*. It is, however, indistinguishable from *In re Harrison*. While we are not bound to follow the precedent of our sister courts of appeals, we find the reasoning of the *In re Harrison* court to be persuasive. *See In re Reardon*, 514 S.W.3d 919, 923 (Tex. App.—Fort Worth 2017, orig. proceeding) (courts of appeals are not bound by precedent of sister courts but may be guided by their reasoning and analysis). As in that case, we hold that the trial court acted within its discretion when it incorporated the terms of the MSA into temporary orders, which it then modified on Father's motion after determining that A.E.P.'s welfare required the modification. *See In re Harrison*, 557 S.W.3d at 140.

Issue One is overruled.

### 3. Findings of Fact and Conclusions of Law

### a. Late-Filed Findings and Conclusions

In Issue Two, Mother contends that the trial court abused its discretion by appointing Father sole managing conservator of A.E.P. without filing findings of fact and conclusions of law pursuant to Rules 296 and 297 of the Texas Rules of Civil Procedure. But the record reflects that the trial court did file findings of fact and conclusions of law, albeit late.

The Final Decree was signed on May 23, 2017. Mother filed a request for findings of fact

10

and conclusions of law on June 9, 2017, and a notice of past due findings of fact and conclusions of law on July 6, 2017. The court's findings and conclusions were therefore due on July 19, 2017; but findings were not filed until August 9, 2017. *See* TEX. R. CIV. P. 297 (past due notice extends time to file findings and conclusions to 40 days after initial request). Mother also filed a motion for new trial, which was overruled by written order on June 21, 2017. The trial court's plenary jurisdiction thus expired on July 21, 2017. *See* TEX. R. CIV. P. 329b(e) (plenary power expires 30 days after motion for new trial is overruled).

Mother argues that this Court cannot consider the trial court's findings and conclusions because they were not timely filed. But *Robles v. Robles*, 965 S.W.2d 605 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), on which she relies, actually supports our ability to consider those findings and conclusions, despite the late filing:

> The procedural rules establishing the time limits for the requesting and filing of findings of fact and conclusions of law do not preclude the trial court from issuing belated findings. Unless they can show injury, litigants have no remedy if a trial court files untimely findings and conclusions. Injury may be in one of two forms: (1) the litigant was unable to request additional findings, or (2) the litigant was prevented from properly presenting his appeal. If injury is shown, the appellate court may abate the appeal so as to give the appellant the opportunity to request additional or amended findings in accordance with the rules.

*Id.* at 610 (citations omitted).

Mother has not demonstrated any harm arising from the late filing of the findings and conclusions. Rather, she asserts that harm is presumed. Again, the case on which she relies does not support her argument. *See Tenery v. Tenery*, 932 S.W.2d 29 (Tex. 1996). The trial court in *Tenery* did not file late findings and conclusions; it did not file any findings and conclusions at all. *See id.* at 29. The supreme court presumed harm in that case in the context of the trial court's child support order because the court was required to make certain findings under the Texas Family Code. *Id*. at 30. The fact that there is no blanket presumption of harm, even when the trial court

11

refuses to file findings and conclusions, is evidenced by the supreme court's holding in *Tenery* that the petitioner was *not* harmed by the failure to make findings and conclusions concerning its property division. *Id.*

There is no presumption of harm in this case because the trial court did not refuse to file findings of fact and conclusions of law. *See Tenery*, 932 S.W.2d at 30. In addition, Mother has not demonstrated that she was unable to request additional or amended findings, or that she was prevented from properly presenting her appeal. *See Robles*, 965 S.W.2d at 610. We are not precluded from considering the trial court's findings of fact and conclusions of law simply because those findings and conclusions were filed late.

Mother next contends that the trial court lacked jurisdiction to file findings and conclusions when it did because its plenary power had expired. *See Sonnier v. Sonnier*, 331 S.W.3d 211, 215 (Tex. App.—Beaumont 2011, no pet.) (trial court lacked jurisdiction to file findings and conclusions once case was on appeal); *but see Robles*, 965 S.W.2d at 610 (giving effect to findings and conclusions filed after appellate brief filed). The supreme court has held, however, that the expiration of a court's plenary power does not affect its authority to file findings of fact and conclusions of law. *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 141 (Tex. 2017) (rejecting argument that court cannot file findings and conclusions after plenary power expires).

That portion of Issue Two complaining of the late filing of the trial court's findings of fact and conclusions of law is overruled.

### b. Findings Recited in the Final Decree

In the remaining portion of Issue Two and in Issue Twelve, Mother contends that the trial court abused its discretion by including findings of fact in the Final Decree. Civil Procedure Rule 299a provides that findings of fact shall not be recited in a judgment but, rather, shall be stated in

12

a separate document. TEX. R. CIV. P. 299a. Even so, "[f]indings contained in a judgment can be given probative value on appeal when the court does not issue any separate *conflicting* findings of fact and conclusions of law." *Howe v. Howe*, 551 S.W.3d 236, 247 (Tex. App.—El Paso 2018, no pet.) (emphasis added); *accord In re U.P.*, 105 S.W.3d 222, 229 n.3 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). In addition, if no party objects in the trial court to the inclusion of findings in the judgment, the appellate court may accept those findings (insofar as they do not conflict with any separately filed findings) for purposes of the appeal. *See Howe*, 551 S.W.3d at 247 (failure to object); TEX. R. CIV. P. 299a (if findings in judgment conflict with separate findings, separate findings control).

Mother did not object in the trial court to the inclusion of findings of fact in the Final Decree. *See Howe*, 551 S.W.3d at 247. Also, Mother does not identify any conflict between the findings of fact recited in the Final Decree and those stated in the separately-filed findings of fact. *See id.* The mere inclusion of findings in the Final Decree is not error and we are not precluded from considering those findings.

That portion of Issue Two complaining of the inclusion of findings of fact in the Final Decree, and Issue Twelve in its entirety, are overruled.

### c. Failure to Make Statutory Findings

In Issue Four, Mother asserts that the trial court abused its discretion by refusing to appoint her either a managing conservator or a possessory conservator without making findings required by Section 153.191 of the Texas Family Code. That section states:

> The court shall appoint as a possessory conservator a parent who is not appointed as a sole or joint managing conservator unless it finds that the appointment is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child.

TEX. FAM. CODE ANN. § 153.191.

The Final Decree appoints Mother possessory conservator of A.E.P., grants her specifically enumerated rights, and imposes on her specifically enumerated duties. Having appointed Mother a possessory conservator, the trial court had no obligation to make any findings under Section 153.191. *See id.* Issue Four is overruled.

### 4. Judgment Conforming to the Pleadings

In Issue Five, Mother contends that the Final Decree does not comport with the pleadings. *See* TEX. R. CIV. P. 301 (judgment shall comport to pleadings). Mother contends that Father's petition requested that the parties be named joint managing conservators, but the Final Decree appoints Father sole managing conservator and denies Mother all visitation rights. We first note that Mother mischaracterizes the Final Decree concerning her visitation rights. The decree orders that Father shall have exclusive possession of the child (upon return of the child to him) until further order of the court, and that a hearing to determine the terms and conditions of possession of and access to the child shall be held within thirty days of that return. The decree does not deny Mother all visitation rights. At most, it suspends those rights for a maximum of thirty days between the time she returns the child to A.E.P. and a court hearing to determine the terms of her visitation rights.

In any event, "[a] complaint that the trial court's judgment fails to comport with the pleadings must be preserved in order to raise it on appeal." *In re S.D.*, No. 02-16-00280-CV, 2017 WL 56167, at *7 (Tex. App.—Fort Worth Jan. 5, 2017, no pet.); *accord Malekzadeh v. Malekzadeh*, No. 14-05-00113-CV, 2007 WL 1892233, at *2 (Tex. App.—Houston [14th Dist.] July 3, 2007, pet. denied). Mother did not object in the court below to any failure of the Final Decree to comport with the pleadings. That complaint is waived and Issue Five is overruled.[3]

---

[3] Additionally, the assertion that a trial court cannot grant a particular type of conservatorship to a party unless the party specifically requested it in his or her pleadings "is against the great weight of Texas caselaw[.]" *In re J.H. III*,

14

### 5. Death Penalty Sanctions

On January 12, 2017, the trial court signed an order on Father's motion to compel discovery and for sanctions requiring Mother to appear for deposition at a specified place and time. The court ordered that, if Mother failed to appear, she "will be prohibited from offering any evidence at the trial of this cause to support or refute any contention made by [Father] which might have been supported or refuted by [her] deposition testimony[.]" On February 8, 2017, after Mother failed to appear for her scheduled deposition and failed to produce requested discovery, the court ordered that Mother "is prohibited from offering any evidence and/or documents [she] has failed to produce." But the court struck through language in the order that would have prohibited Mother from introducing or objecting at trial to evidence to support or refute any contention by Father which might have been supported or refuted by her deposition testimony or by documents she failed to produce.

In Issue Eleven, Mother argues that the trial court abused its discretion by imposing death penalty sanctions. We disagree, both because the sanction imposed is not a death penalty sanction and because it was well within the trial court's discretion.

A death penalty sanction is one under which "the offending party essentially loses the case because of the sanction[.]" *Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 572 (Tex. 2018). Death penalty sanctions are those "that strike a party's pleading, dismiss the party's action, or render default judgment, adjudicate a claim, and preclude the presentation of the merits of the case." *Hogg v. Lynch, Chappell & Alsup, P.C.*, 553 S.W.3d 55, 70 (Tex. App.—El Paso 2018, no pet.) (internal brackets omitted) (quoting *In re Estate of Marley*, 390 S.W.3d 421, 424 (Tex.

---

538 S.W.3d 121, 125 (Tex. App.—El Paso 2017, no pet.). In cases involving child custody and child support issues, where the "best interest" of the child is the paramount concern, technical pleading rules are of reduced significance. *See, e.g.*, *In re L.D.F.*, 445 S.W.3d 823, 832 (Tex. App.—El Paso 2014, no pet.).

App.—El Paso 2012, pet. denied)). Because "a direct relationship must exist between the offensive conduct and the sanction imposed," death penalty sanctions are reserved for the most egregious cases. *Wilson*, 540 S.W.3d at 572 (citing *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)).

We cannot conclude that the sanction here imposed by the trial court was a death penalty sanction. The sanctions did not adjudicate Mother's claim without regard to the merits, and Mother "fails to direct this Court to any record evidence showing that she attempted to establish that the order prevented her from presenting a case on the merits." *Hogg*, 553 S.W.3d at 70. In addition, this Court has recognized that when a party intentionally refuses to turn over discovery materials, "the trial court's discretionary authority to sanction the disobedient party encompasses all possible sanctions, up to and including a death penalty sanction." *Id.*

The Texas Rules of Civil Procedure expressly address the consequences of a party's failure to comply with a discovery request or failure to appear for deposition. A party who fails to make a timely discovery response may not introduce in evidence the material that was not timely disclosed, unless it makes a showing of good cause and lack of unfair surprise or prejudice to the opposing party. TEX. R. CIV. P. 193.6(a), (b). If a party fails to appear for deposition, the court may "make such orders in regard to the failure as are just, . . . [including] an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence." TEX. R. CIV. P. 215.1(b)(2)(A), 215.2(b)(4).

The sanction in this case was limited to prohibiting Mother from offering evidence or documents she failed to produce. This sanction was authorized by both Rule 193.6 and Rule 215.2. Mother has not demonstrated that the court's order complying with these rules constitutes an abuse

16

of discretion.[4]  In addition, Mother does not identify anywhere in the record that she attempted to introduce any evidence that was excluded based on the sanctions order.  *See Hogg*, 553 S.W.3d at 70.  She has therefore failed to demonstrate that the asserted error, even if it had merit, is reversible. *See* TEX. R. APP. P. 44.1 (error is not reversible in the absence of a showing of harm).

Issue Eleven is overruled.

## B.  Issues Concerning the Best Interest of the Child

### 1.  Appointment of Father as Sole Managing Conservator

In Issue Three, Mother urges that the trial court abused its discretion by appointing Father sole managing conservator of the child. Texas recognizes a rebuttable presumption that it is in the best interest of a child to appoint the parents as joint managing conservators.  *Lide v. Lide*, 116 S.W.3d 147, 152 (Tex. App.—El Paso 2003, no pet.) (citing TEX. FAM. CODE ANN. § 153.131(b)). A rebuttable presumption "shift[s] the burden of producing evidence to the party against whom it operates."  *Id.* (quoting *In re Rodriguez*, 940 S.W.2d 265, 271 (Tex. App.—San Antonio 1997, writ denied)).  Once evidence contradicting the presumption is offered, the presumption disappears and "is not weighed or treated as evidence."  *Id.*

Determining whether appointing joint managing conservators is in a child's best interest involves consideration of the following factors:

(1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;

(2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;

(3) whether each parent can encourage and accept a positive relationship between the child and the other parent;

---

[4] The order granting sanctions indicates that an evidentiary hearing was held on the merits, but Mother did not provide this Court with a record of that hearing.  For this additional reason, her challenge to the sanctions order fails.  *See Box v. Flynn*, 870 S.W.2d 585, 592-93 (Tex. App.—San Antonio 1993, no writ) (overruling appellate complaint concerning ruling on sanctions motion because appellant did not file record of sanctions hearing).

17

(4) whether both parents participated in child rearing before the filing of the suit;

(5) the geographical proximity of the parents' residences;

(6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and

(7) any other relevant factor.

TEX. FAM. CODE ANN. § 153.134; *accord Lide*, 116 S.W.3d at 152-53.

The evidence in this case establishes that, in direct violation of the parties' MSA and orders issued by the trial court, Mother abducted A.E.P. to Mexico, has refused to divulge his whereabouts, and has prevented Father from having any access to or contact with him. This evidence rebuts the presumption that appointing Father and Mother joint managing conservators is in A.E.P.'s best interest, and supports the trial court's finding instead that appointing Father sole managing conservator is in the child's best interest. Specifically, Mother has demonstrated an inability to reach shared decisions in the child's best interest; Mother cannot encourage and accept a positive relationship between the child and Father; and Father resides in El Paso County, which was ordered to be the child's exclusive residence, whereas Mother is residing in Mexico, where she is wrongfully keeping the child. *See* TEX. FAM. CODE ANN. § 153.134; *Lide*, 116 S.W.3d at 152-53.

Mother presented no evidence refuting that she has engaged in any of the behavior recited above. Rather, she argues that the trial court could not appoint Father sole managing conservator in the absence of evidence that she is "derelict or [a] bad mother" and that appointing her a joint managing conservator "would be detrimental to the child's overall well-being." Mother does not identify any authority holding that such evidence is required or that failure to present such evidence deprives the trial court of discretion in the matter. Under Section 153.134, the benefit or detriment to a child from appointing the parents joint managing conservators is merely one factor to be

18

considered. TEX. FAM. CODE ANN. § 153.134; *see Lide*, 116 S.W.3d at 152-53. Indeed, this Court in *Lide* recognized that there was "no evidence that a joint managing conservatorship would have a negative impact upon the children[.]" *Lide*, 116 S.W.3d at 153. Even so, because trial courts have wide latitude in determining the best interest of a child, the court upheld the appointment of one parent as sole managing conservator. *Id.* at 155.

The evidence of Mother's unlawful conduct in this case (which unlawful conduct is continuing and directly impacts the child) rebuts the presumption in favor of joint managing conservatorship and amply supports the trial court's determination that appointing Father sole managing conservator is in A.E.P.'s best interest. Issue Three is overruled.

## 2. Child Support Order

The Final Decree orders Mother to pay child support in the amount of $1,710 per month, beginning on May 1, 2017. In Issue Six, Mother asserts that the trial court abused its discretion by requiring her to pay child support when she, rather than Father, has actual possession of the child and is incurring all the expense of caring for him.[5] This is a bold assertion given that Mother has possession of the child only because she is in direct, intentional, and repeated violation of the orders of the trial court. Indeed, she demonstrates her utter disregard for the court's authority by stating in her brief that Father "has not had possession or access to the child since January of 2015," and "may never gain access or visitation to the minor child[.]" She then has the temerity to argue that, since she has actual, though unlawful, possession of the child, the court should have ordered Father to pay child support to her.

Mother does not cite any authority supporting her argument that a court cannot order a

---

[5] While the record clearly reflects that Father has not had possession of the child, or even any contact with him, for over two years, there is no evidence that the child is actually in Mother's possession. It is undisputed that Mother abducted the child to Mexico, but she has consistently refused to reveal his whereabouts. We cannot simply assume that the child is still with her and that she is incurring the expense of caring for him.

parent to pay child support unless the other parent has actual physical possession of the child. There is, however, precedent to the contrary. In *Duran v. Garcia*, 224 S.W.3d 309 (Tex. App.— El Paso 2005, no pet.), this Court declined a party's "invitation to legislate from the bench that a [child] support obligee must have actual physical possession of a child." *Id.* at 314; *see In re B.A.C.*, 144 S.W.3d 8, 14 (Tex. App.—Waco 2004, no pet.) (upholding order to pay child-support arrearages for periods when obligee did not have possession of child).

The trial court here appointed Father sole managing conservator and ordered Mother to pay child support beginning with the first day of the first month following that appointment. In other words, the court ordered Mother to pay child support commencing with Father's legal entitlement to sole possession of the child. There is no basis in law, equity, public policy, or common sense to permit Mother to use her disregard for, and intentional continuing violation of, the court's possession order to avoid her child support obligation.

Issue Six is overruled.

### 3. Compliance Bonds

#### a. $400,000 bond

Under the Texas Family Code, if a trial court finds there is a risk of international abduction of a child by a parent, it may order the parent to execute a bond in an amount sufficient to offset the cost of recovering the child. TEX. FAM. CODE ANN. §§ 153.501, 153.503(6). The trial court here made a fact finding that there is a risk of Mother abducting the child to a foreign country. Based on this finding, the court ordered that Mother execute a bond in the amount of $400,000 to offset the cost of returning the child if Mother abducts him to a foreign country.

In Issue Seventeen, Mother argues that this bond order constitutes an abuse of discretion because she currently has possession of the child and there is no order for her to return him. Mother

20

is mistaken. The Final Decree clearly orders her to deliver the child either to Father or to the court. The decree also permanently enjoins Mother from removing the child from the United States, in general, or from El Paso County, Texas, in particular, and from hiding or secreting the child from Father.

We also note that Mother's argument is based on the wrong section of the Family Code. *See* TEX. FAM. CODE ANN. § 153.011. Section 153.011, on which Mother relies, authorizes a trial court to order a party with a possessory interest in a child to execute a bond if the court finds that the party may violate the court order relating to the interest. *Id.* A Section 153.011 bond is conditioned on compliance with the order. *Id.* As just noted, Section 153.503 addresses the risk of international abduction of a child and is intended to offset the cost of retrieving the child. *See* TEX. FAM. CODE ANN. § 153.503.

The $400,000 bond in this case is founded on the risk of international abduction by Mother and is intended to offset the cost of retrieving A.E.P. from such abduction. It therefore falls directly within Section 153.503 rather than Section 153.011. *See* TEX. FAM. CODE ANN. §§ 153.011, 153.503. Unlike Section 153.011, Section 153.503 is not premised on a finding that a party may violate a court order. It requires only that the court find it necessary "to take measures to protect a child from international abduction by a parent[.]" *See* TEX. FAM. CODE ANN. §§ 153.011, 153.503.

Mother's contention that the $400,000 bond is an abuse of discretion because there is no order for her to return A.E.P. is incorrect both on the facts of this case and on the applicable law. Issue Seventeen is overruled.

Next, in Issue Eighteen, Mother asserts that the trial court abused its discretion by setting the amount of the bond at $400,000 because there is no evidence that it would cost Father that

much to get the child back. Father testified that he has already spent $200,000 trying to obtain his son's return and has not yet been successful. In addition, the evidence is undisputed that Mother unlawfully took the child to Mexico, steadfastly refuses to return him or even reveal his whereabouts, and continues to blatantly disregard court orders concerning the return of the child. Finally, there is evidence that Mother earns $50,000 per month as a retina specialist physician. She therefore has considerable resources to assist her in hiding the child and engaging in legal maneuvers to avoid returning him.

The trial court was entitled to infer from the entirety of the evidence that obtaining A.E.P.'s return will be a difficult and expensive endeavor, as it has already proven to be. We cannot say on this record that the trial court abused its discretion by determining that $400,000 is an appropriate bond amount. Issue Eighteen is overruled.

### b. $200,000 bond

As stated above, a trial court may order a party with a possessory interest in a child to execute a bond if the court finds that the party may violate the court order relating to the interest. TEX. FAM. CODE ANN. § 153.011. The Final Decree orders Mother to post a cash or surety bond in the amount of $200,000, payable to Father, "conditioned on [Mother's] compliance with the order permitting possession of or access to the child." In Issue Nineteen, Mother contends that the trial court abused its discretion by ordering this bond in addition to the $400,000 bond. Her sole argument is that Section 153.011 does not authorize more than one bond. *See* TEX. FAM. CODE ANN. § 153.011.

The flaw in Mother's position is that the trial court did not order two bonds pursuant to Section 153.011. Rather, the $400,000 bond is authorized by Section 153.503(6), the purpose of which is "to protect a child from international abduction by a parent[.]" TEX. FAM. CODE ANN. §

22

153.503.  The $200,000 bond, on the other hand, is authorized by Section 153.011, the purpose of which is more generally to promote compliance with the court's orders concerning possession of a child.  TEX. FAM. CODE ANN. § 153.011.

The trial court did not abuse its discretion by ordering Mother to execute two bonds serving two purposes pursuant to two distinct statutes.  *See* TEX. FAM. CODE ANN. §§ 153.011, 153.503.  Issue Nineteen is overruled.

In Issue Twenty, Mother contends that the $200,000 bond constitutes an abuse of discretion because the child is in her possession and, she urges, Section 153.011 "presupposes that the child is not in [the] possession of the parent against whom the bond is to be set."  In essence, Mother argues that the court could not require a bond based on its finding that she may violate a court order relating to her possession of A.E.P. because she is already in violation of court orders relating to possession and has demonstrated that she has no intention of complying with any such order in the future.

Mother cites no authority for the proposition that a parent with physical possession of a child cannot be ordered to execute a compliance bond.  We have found no such authority and nothing in the language of the statute supports Mother's contention.  On the contrary, the statute authorizes a trial court to impose a bond on any person with a possessory interest in a child (regardless of who has possession of the child at the moment) if there is reason to believe that the person will violate the court's orders relating to that interest.  TEX. FAM. CODE ANN. § 153.011.

Mother is a person with a possessory interest in A.E.P., and she does not dispute that she is engaged in a continuing practice of violating court orders relating to that possessory interest.  That is all the statute requires. Issue Twenty is overruled.

## C.  Property Division

## 1. Testimony Concerning Property Values

In Issue Eight, Mother asserts that the trial court abused its discretion by admitting Father's testimony regarding the value of certain community properties. Father testified to how and when those properties were acquired, as well the cost to purchase them. Mother's complaint on appeal is that the testimony should have been excluded because it is conclusory.

Except in one instance, Mother's only objection to Father's valuation testimony was that the questions posed to him were leading. As to one specific business property (identified at trial as Gomez Morin), Father testified that, based on his knowledge of the cost of the property, its value was $1,535,000. Father's attorney reminded the court that Mother had been ordered to produce documents necessary to value the business as an ongoing concern, but she never produced them. At this point, Mother objected that Father's testimony concerning the value of the property was speculative. Father responded that the valuation was actually conservative because it was a cost value, not value as an ongoing concern. The objection was overruled and Father continued to testify concerning the values of other community property.

Mother's contention on appeal is that Father's valuation testimony is conclusory and, thus, inadmissible. Mother did not, however, raise that objection in the trial court. As to the bulk of Father's testimony, Mother's only objection was to the form of the question being asked. As to the Gomez Morin property, Mother's objection was that the testimony was speculative. But an objection that testimony is conclusory is not the same as an objection that it is speculative. Conclusory testimony states a conclusion with no basis or explanation. *Windrum v. Kareh*, 581 S.W.3d 761, 768 (Tex. 2019). Speculative testimony is based on guesswork or conjecture. *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012).

24

A complaint on appeal that does not comport with the party's objection at trial is not preserved for review. *In re N.T.*, 335 S.W.3d 660, 670 (Tex. App.—El Paso 2011, no pet.) (citing *Knapp v. Wilson N. Jones Mem. Hosp.*, 281 S.W.3d 163, 171 (Tex. App.—Dallas 2009, no pet.); *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639–40 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). Mother's challenge on appeal to the admission of Father's testimony does not comport with her objections to that testimony at trial. No error is preserved for review. *See In re N.T.*, 335 S.W.3d at 670.

In addition, preservation of error in the admission of evidence requires a timely objection. TEX. R. APP. P. 33.1(a); *Biggar v. Palmer*, No. 08-01-00468-CV, 2003 WL 22361068, at *9 (Tex. App.—El Paso Oct. 16, 2003, no pet.). Mother did not object at the time Father gave his opinion concerning the value of the Gomez Morin property. Rather, she lodged her objection to speculation only after another question was posed and after an exchange between counsel concerning Mother's failure to produce documents concerning the property's value. Mother's belated objection preserved nothing for review. *See* TEX. R. APP. P. 33.1(a); *Biggar*, 2003 WL 22361068, at *9.

Mother argues that no objection is required to preserve the assertion on appeal that conclusory evidence is legally insufficient to support a judgment. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). But Mother's eighth issue on appeal is that Father's testimony should have been excluded, not that the evidence is legally insufficient. "Complaining on appeal that the trial court abused its discretion in admitting evidence is not the same as complaining the evidence is legally insufficient to support the judgment." *Dallas Cty. v. Crestview Corners Car Wash*, 370 S.W.3d 25, 56 (Tex. App.—Dallas 2012, pet. denied).

In any event, to the extent that Mother's eighth issue implicates the legal sufficiency of the

evidence, the issue fails on the merits. Father testified to the value of various properties based on his knowledge of the cost to acquire those properties and his knowledge of the use to which they were being put. Mother argues that this testimony is legally insufficient because evidence of purchase price does not constitute any evidence of subsequent market value. *See Lee v. Dykes*, 312 S.W.3d 191, 195 (Tex. App.—Houston [14th Dist.] 2010, no pet.). But *Lee*, on which Mother relies, is in apposite.

The issue in *Lee* concerned the assessment of damages as a remedy for conversion. "Generally, the measure of damages for conversion is the fair market value of the property at the time and place of the conversion." *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex. 1997). Because of this legal standard, evidence of purchase price was legally insufficient to establish conversion damages.

The issue in the present case is not damages, but the division of the parties' community property. Mother has not identified any authority requiring that such a division must be based on the property's market value. She has thus failed to demonstrate that Father's cost-based valuation testimony constitutes no evidence for purposes of determining a fair and just property division.

Issue Eight is overruled.

### 2. Summary of Property Values

In Issue Seven, Mother contends that the trial court abused its discretion by admitting exhibit P-2, a summary of community property values, because that exhibit is conclusory and is not based on personal knowledge or a proper foundation. She also contends that the exhibit is not an admissible summary under Rule 1006 of the Texas Rules of Evidence. *See* TEX. R. EVID. 1006 (providing for admission of summaries of voluminous writings). Mother did not object at trial that exhibit P-2 was conclusory or that it did not comply with Rule 1006. Those objections are waived.

26

*See In re N.T.*, 335 S.W.3d at 670 (appellate complaint must comport with trial objection).

Mother did object to exhibit P-2 at trial on the grounds of lack of foundation and hearsay. As to lack of foundation, Mother merely restates the legal principles that conclusory statements are not admissible as evidence and cannot support a judgment, even if they are not objected to. *See Pollock*, 284 S.W.3d at 816. But Mother does not explain how exhibit P-2 is conclusory especially in light of Father's companion testimony. "When an issue is inadequately briefed, and lacks a substantive analysis . . . , it presents nothing for our review." *Pedroza v. Tenet Healthcare Corp.*, 555 S.W.3d 608, 612 (Tex. App.—El Paso 2018, no pet.) (citing *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010)); *see* TEX. R. APP. P. 38.1(i) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and record).

As to Mother's hearsay objection, the entirety of her argument is as follows:

> Hearsay constitutes a valid objection to evidence such as that offered by Respondent as exhibit P-2. *See Kuehn v. Kuehn*, 594 S.W.2d 158 (Tex. Civ. App.---Houston [14th Dist.] 1980, no writ) (recognizing that that the ad valorem tax value may not be used to determine the fair market value of real estate because such evidence is hearsay. *Id*. at 161).

Mother does not explain how the holding in *Kuehn* applies to the facts of this case. In fact, *Kuehn* is factually distinguishable because, unlike the evidence in *Kuehn*, Father's valuation evidence was not based solely on valuation by a taxing authority. *See Kuehn*, 594 S.W.2d at 166. Rather, Father's testimony, which is summarized in exhibit P-2, was based on his own personal knowledge of the sums spent to acquire various properties during the marriage, as well as his knowledge of the use to which the properties were being put. *See Justiss*, 397 S.W.3d at 155

27

(property owner may testify to value of property).[6] Mother has not demonstrated that the trial court abused its discretion by admitting exhibit P-2 over her hearsay objection.

Finally, Mother's reliance on *Kuehn* is also misplaced because that case actually defeats her complaint concerning the admission of Father's valuation evidence. While the *Kuehn* court held that the evidence at issue was improperly admitted, it concluded that there was no reversible error. 594 S.W.2d at 161-62. Because the appellant did not introduce any evidence of the true value of the disputed assets, the appellate court could not conclude that the trial court's property division was an abuse of discretion. *Id.* at 161. Consequently, it held that "the failure of the evidence to support the finding of fact by the trial court as to the value of the real estate did not, of necessity, result in an abuse of its discretion in dividing the property of the parties." *Id.* at 162.

In the present case, Mother did not offer any evidence of the value of the properties that were the subject of Father's testimony and exhibit P-2. Even if she had demonstrated that the court abused its discretion in admitting Father's valuation evidence, she has not demonstrated that any such error resulted in an abuse of discretion in dividing the parties' community property. *See id.*

Issue Seven is overruled.

### 3. Sufficiency Challenge

In Issue Sixteen, Mother contends that the trial court did not have sufficient information upon which to make a fair and just division of the community estate. This complaint implicates the first prong in our abuse of discretion analysis—whether the trial court had sufficient information upon which to exercise its discretion. *In re M.V.*, 583 S.W.3d at 361; *In re T.M.P.*, 417 S.W.3d at 562.

---

[6] Mother asserts for the first time in her reply brief that Father could not testify concerning the value of properties located in Mexico because those properties were purchased by Mother and, therefore, Father was not an owner. This argument was not raised either in the trial court or in Mother's opening brief. It is waived. *See Reyes v. Burrus*, 411 S.W.3d 921, 923 n.2 (Tex. App.—El Paso 2013, pet. denied) (argument raised for first time in reply brief is waived).

Father testified that, during the marriage, the parties acquired properties in El Paso and Mexico. He also testified that he had a bank account, retirement benefits, life insurance, and two cars. He presented evidence concerning the value of the Mexico properties, based on his knowledge of the cost to acquire those properties and his knowledge of the use to which they were being put. Father's counsel pointed out that the valuation of at least one of those properties was hampered because Mother refused to produce relevant documents, despite having been ordered to do so. Mother does not dispute that she failed to comply with the order to produce. Father testified that Mother also refused to produce bank records, which Mother also does not dispute.

Mother did not present any evidence of the value of any of the parties' community estate. "Generally, a party who does not provide to the trial court any value for the property cannot, on appeal, complain of the trial court's lack of information in dividing the community estate." *Wheeling v. Wheeling*, 546 S.W.3d 216, 228 (Tex. App.—El Paso 2017, no pet.); *see Reyes v. Reyes*, 458 S.W.3d 613, 620 (Tex. App.—El Paso 2014, no pet.) (both parties bear responsibility to produce evidence of the value of community property to provide trial court with basis upon which to make property division). Mother, having failed to fulfill her responsibility to provide the trial court with any evidence to assist in its property division, cannot now complain to this Court that the trial court lacked sufficient information. *See Wheeling*, 546 S.W.3d at 228; *Reyes*, 458 S.W.3d at 620.

Mother also fails to establish the second prong of our abuse of discretion analysis—that the trial court erred in its application of discretion. *In re M.V.*, 583 S.W.3d at 361; *In re T.M.P.*, 417 S.W.3d at 562. Mother's ultimate burden, as the party challenging the property division, is to "demonstrat[e] from the evidence in the record that the trial court's division was so unjust and

unfair as to be an abuse of discretion." *Richardson v. Richardson*, 424 S.W.3d 691, 696 (Tex. App.—El Paso 2014, no pet.).

The Final Decree awards Father the El Paso property, his bank accounts, retirement benefits, life insurance, and his two cars. The Decree awards Mother four Mexico properties (subject to the liens addressed below), two businesses in Mexico, her life insurance, and her two cars. The property division is not unjust and unfair on its face, and Mother has not demonstrated from evidence in the record that it is, in fact, unjust and unfair. *See id.*

Issue Sixteen is overruled.

### 4. Property in Mexico

### a. Adjudication of title

In Issue Nine, Mother contends that the trial court abused its discretion by adjudicating title to real property located in the Republic of Mexico. Relying on *Holt v. Guerguin*, 106 Tex. 185, 163 S.W. 10 (1914), she argues that Texas courts lack jurisdiction over land outside its borders. *See* 163 S.W. at 12. But, while a Texas court lacks jurisdiction over property located outside Texas, it may "require parties over whom it has *in personam* jurisdiction to execute a conveyance of real estate located" outside of Texas. *Griffith v. Griffith*, 341 S.W.3d 43, 57 (Tex. App.—San Antonio 2011, no pet.); *see Chatterjee v. Banerjea*, No. 05-18-01035-CV, 2019 WL 3886655, at *7 (Tex. App.—Dallas Aug. 19, 2019, no pet.) ("A trial court with personal jurisdiction over the parties also possesses jurisdiction to require the parties to convey their respective property, even real estate, located outside of Texas, incident to a divorce."). It is undisputed that the trial court had *in personam* jurisdiction over both Mother and Father.

The Final Decree in this case awards property located in Mexico to Mother. Mother asserts that the trial court had no jurisdiction to make this award. The Texas Family Code requires a court

30

in a divorce action to order a division of the parties' real and personal property, "wherever situated[.]" TEX. FAM. CODE ANN. § 7.002. The trial court therefore had the authority to allocate all of the parties' property between them, regardless of the location of that property.

Insofar as Mother contends that a conveyance by Father of his rights in the Mexico properties is necessary to give effect to the court's allocation, we do not find anywhere in the record that Mother requested that such a conveyance be ordered, or that she even brought to the trial court's attention that any such conveyance was necessary. In fact, as discussed below, the record does not reflect any dispute that Mother owns the Mexico properties. For this reason, there would be no need to order Father to execute a conveyance of rights he does not possess.

Issue Nine is overruled.

### b. Imposition of liens

The trial court found that Mother had "committed actual or constructive fraud against the community estate through fraudulent transfers and wrongful depletion of the community estate and breached her fiduciary duty to [Father], as her spouse, and reconstitution of the community estate is necessary to achieve a just and right division." The court further found that, as a result of Mother's wrongful conduct, judgment in favor of Father "in the amount of $1,339,448.60 is necessary to achieve a just in right division of assets[.]" Mother does not contest these findings or the inclusion in the Final Decree of a $1,339,448.60 judgment against her. In her tenth issue, however, she does contest the provision in the decree ordering her to execute any and all documents necessary for Father to obtain a proper security interest against the Mexico properties to secure this judgment.

In Issue Ten, Mother argues that the trial court lacked jurisdiction to impose a lien on the Mexico properties, again relying on the principle that Texas courts cannot adjudicate title to land

31

located outside Texas. *See Holt*, 163 S.W. at 12; *Hartman v. Sirgo Operating, Inc.*, 863 S.W.2d 764, 766 (Tex. App.—El Paso 1993, writ denied). "But Texas courts may enforce an *in personam* obligation by ordering a party to convey land located in another state. The distinguishing factor between these two principles is whether the cause before the Court involves a naked question of title." *Hartman*, 863 S.W.2d at 766 (citations omitted). Stated another way, "Texas courts have subject matter jurisdiction over lawsuits relating to real property outside of Texas if the nature of the suit and the remedy sought directly affect and operate upon the defendant, and not upon the out-of-state property." *In re Elamex, S.A. de C.V.*, 367 S.W.3d 891, 897–98 (Tex. App.—El Paso 2012, no pet.).

The nature of the claims here at issue (fraud and breach of fiduciary duty) and the remedy (damages) directly affect and operate on Mother, not on the Mexico properties. *See id.* We recognize that Mother's actionable deceptions involved those properties, but the basis of Father's claims is not title to the properties but Mother's wrongful conduct on obtaining them. For this reason, title to the Mexico properties is involved in a merely incidental or collateral way. *See id.* at 898. In addition, the order to execute documents necessary for Father to obtain a security interest in those properties is an order enforcing Mother's *in personam* obligation to pay the money judgment, not an adjudication of title. *See Hartman*, 863 S.W.2d at 766.

Mother cites *Merit Management Partners I, L.P. v. Noelke*, 266 S.W.3d 637, 648 (Tex. App.—Austin 2008, no pet.), for the proposition that a lawsuit involves the adjudication of title if title "is actually involved as the basis, as well as measure of right of any recovery." *Id.* at 646-47. As just noted, that is not the case here. In any event, *Noelke* goes on to clarify that "even if title to real property is a necessary predicate to recovery in a case for money damages, it is incidental to the case if there is no real dispute over title that must be resolved[.]" *Id.* at 648.

The gist of Father's claims is not that he or the community actually held title to the Mexico properties, but that Mother used community assets to acquire those properties. Father specifically testified that Mother purchased and owned the properties, including some she purchased in her mother's name. Mother did not dispute this testimony or her ownership of the properties. Under *Noelke*, even if title were considered to be a predicate to Father's recovery of damages for Mother's fraud and breach of fiduciary duty, title was merely incidental because there was no title dispute for the trial court to resolve. *See id.*

We conclude that the trial court acted within its jurisdiction by ordering Mother to execute any documents necessary for Father to obtain a security interest against the Mexico properties.

Issue Ten is overruled.

### D.  Attorney's Fees

### 1.  Unsworn Testimony

In Issue Thirteen, Mother contends the trial court abused its discretion by awarding attorney's fees in the sum of $206,492.09, given that Mother objected to the unsworn testimony of Father's attorney and only his unsworn testimony was offered in support of this award. Mother asserts that her trial counsel informed the trial court before Father's attorney began to testify that "I would like him [Attorney Jeff Minor] to be sworn." Mother asserts her objection preserved error regarding all of Minor's unsworn testimony which requested that he be awarded $206,492.09 in attorney's fees.

Generally, attorney's statements must be made under oath to be considered evidence. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997); *Marquez v. Providence Mem'l Hosp.*, 57 S.W.3d 585, 593 (Tex. App.—El Paso 2001, pet. denied). But the oath requirement may be waived

if the opposing party fails to object when it knows or should know that an objection is necessary. *Banda*, 955 S.W.2d at 272; *Marquez*, 57 S.W.3d at 593.

On review, we find that the record does not in fact support Mother's assertion. Although Mother's counsel objected at trial, the objection was not made before Minor began testifying, but rather, it was made after other objections were raised and after Minor had already given substantive testimony. In short, we find that counsel's objection was not made on a timely basis at the time it became apparent that Minor intended to provide direct testimony in support of an award of fees. *See Darnell v. Broberg*, 565 S.W.3d 450, 462 (Tex. App.—El Paso 2018, no pet.) (noting requirement of timely objection to unsworn testimony); *Simmonds v. TDCJ*, No. 10-07-00361-CV, 2010 WL 654498, at *3 n.3 (Tex. App.—Waco Feb. 24, 2010, no pet.) (holding issue of unsworn testimony waived by failure to make timely objection). After the trial court requested, "[c]all your next witness, please," Minor responded, "I call myself on the issue of attorneys' fees." Minor then expressly asked for permission to testify from counsel table and, after being given permission to do so, began to narrate about his background, expertise, and familiarity with fees charged in the area. Given that Minor called himself as a witness and directly expressed his intent to provide testimony, Mother immediately knew or should have known that Minor was testifying without being sworn and an objection was then necessary. *See Banda*, 955 S.W.2d at 272; *Marquez*, 57 S.W.3d at 593. Mother's counsel, however, lodged no objection about Minor's testimony being unsworn.

As Minor continued, Mother's counsel twice objected to the evidence being conclusory which drew the court's attention to his complaint that the testimony failed to sufficiently identify the nature of the work performed and how his time was spent on certain tasks. Only after complaining about Minor further testifying about work performed by two Mexican lawyers who

34

were consulted during Minor's representation did Mother then request that Minor be sworn as a witness. Mother also complained that the Mexican lawyers were not then present themselves at the hearing.

We conclude that the circumstances here are distinguishable from *Marquez* on which Mother relies in support of her argument. In *Marquez*, we noted that the attorney who testified in support of the award of fees "did not preface his remarks by stating that he was making them as an officer of the court nor did he refer to his argument as testimony, and therefore, it would not have been apparent to opposing counsel that an objection was required." 57 S.W.3d at 593. Here, in contrast, Minor clearly stated from the beginning of his remarks that he was calling himself as a witness to give testimony. With his opening, Minor placed Mother's counsel on notice that he intended to give direct testimony in support of Father's request for an award of fees. *See id.* Because the record shows that Mother did not lodge her objection until Minor had already travelled well into the substance of his testimony, we find she did not comply with the rule requiring a *timely* objection to preserve error.[7] *See* TEX. R. APP. P. 33.1; *Darnell*, 565 S.W.3d at 462; *Simmonds*, 2010 WL 654498, at *3 n.3.

Issue Thirteen is overruled.

## 2. Legal Sufficiency of Evidence to Support Award of Attorneys' Fees

In Issues Fourteen and Fifteen, Mother asserts that the trial court abused its discretion by awarding attorney's fees of $206,492.09, which sum includes fees paid to Father's attorney as well as to two Mexican attorneys who were also retained by Father's counsel. Mother asserts that (1)

---

[7] Mother erroneously states that she requested, and was granted, a running objection based on her belated objection to unsworn testimony. The running objection she requested was *not* that Minor's testimony was unsworn. Rather, Mother expressly informed the court, "My objection is that it's conclusory statements and it's not broken down in any meaningful way."

Father did not present a breakdown of the task performed; and (2) there is no provision in the Texas Family Code authorizing an award of fees paid to foreign attorneys. We address both points together.

To secure an award of attorney's fees from an opponent, the prevailing party must prove (1) the recovery of attorney's fees is legally authorized by statute or contract, and (2) only fees reasonable and necessary for the legal representation may be shifted to the non-prevailing party, and not necessarily for the amount contracted for between the prevailing party and its attorney, as a client's agreement to a certain fee arrangement does not necessarily establish that fee as reasonable and necessary. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487-88 (Tex. 2019) (citing *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). An amount incurred or contracted for is not conclusive evidence of reasonableness or necessity. *See id* at 488. "The fee claimant still has the burden to establish reasonableness and necessity." *Id*.

In *Rohrmoos*, the Texas Supreme Court again clarified the law governing recovery of attorney's fees in Texas courts after noting that confusion remained over the use of two existing methods. *Rohrmoos*, 578 S.W.3d at 490. *Rohrmoos* described how Texas jurisprudence first developed a factor-based method for the fact finder to assess what fees were reasonable and necessary, which formed the cornerstone for courts' shifting of attorney's fees away from the prevailing party. *Id*. (citing *Arthur Andersen*, 945 S.W.2d at 818). The *Arthur Andersen* factors often cited by courts included the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services;

36

(4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Id.* at 493-94 (citing Tex. Disciplinary R. Prof'l Conduct 1.04, *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9)). The Texas Supreme Court explained in *Arthur Andersen* that without evidence of the above-listed factors the fact finder had no meaningful way to determine if fees sought were in fact reasonable and necessary. *Arthur Andersen*, 945 S.W.2d at 818–19. *Rohrmoos* clarified that "[t]he factors were designed to be applicable across all fee-shifting awards, whether determined by the jury or trial court." *Rohrmoos*, 578 S.W.3d at 494 (citing *Young v. Qualls*, 223 S.W.3d 312, 314 (Tex. 2007) (per curiam)).

*Rohrmoos* clarified that, beginning in 2012, the Texas Supreme Court had issued a line of cases that provided additional guidelines for determining reasonableness and necessity, and in so doing, introduced the lodestar calculation to Texas jurisprudence. *Id*. at 494-96 (citing, *e.g.*, *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012) (analyzing a fee award under the Texas Commission on Human Rights Act (TCHRA)); *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) (per curiam) (analyzing fees incurred by a property owner who successfully defended against a condemnation suit); *Long v. Griffin,* 442 S.W.3d 253, 255 (Tex. 2014) (per curiam) (analyzing a fee award recovered in a breach of contract claim)). *Rohrmoos* clarified "[i]t should have been clear from our opinions in *El Apple*, *Montano*, and *Long* that we intended the lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Id*. at 497-98.

Accordingly, *Rohrmoos* instructed that "the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Id.* at 498 (citing *El Apple*, 370 S.W.3d at 760). Notably, *Rohrmoos* proclaimed that "[s]ufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Id.* (citing *El Apple*, 370 S.W.3d at 762-63). Moreover, *Rohrmoos* again confirmed that "because fee-shifting awards are to be reasonable and necessary for successfully prosecuting or defending against a claim, reasonableness and necessity are not dependent solely on the contractual fee arrangement between the prevailing party and its attorney." *Id.* Instead, the determination of what constitutes a reasonable attorney's fee involves two steps. *Id.* at 501. When awarding an attorney's fee, the trial court or fact finder must first determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. *Id.* Next, the number of hours is then multiplied by the applicable rate to produce the base fee or product known as the lodestar. *Id.* The base lodestar may be adjusted up or down (apply a multiplier) by the trial court or fact finder, if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.* The factors listed in *Arthur Andersen*—when given relevant consideration—may justify an adjustment, but it should be noted that considerations already incorporated into the base calculation may not be applied to rebut the presumption that the base calculation reflects reasonable and necessary attorney's fees. *Id.* (citing *Arthur Andersen*, 945 S.W.2d at 818).

*Rohrmoos* further instructed that general, conclusory testimony devoid of any real substance will not support a fee award. *Id.* A claimant seeking an award of attorney's fees must

prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought. *Id*. at 501-502 (citing *Long*, 442 S.W.3d at 255–56; *Montano*, 414 S.W.3d at 736–37; *El Apple*, 370 S.W.3d at 763–64). Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Id*. (citing *El Apple*, 370 S.W.3d at 762–63). Although contemporaneous billing records are not required to prove that the requested fees are reasonable and necessary, nonetheless, these records are *strongly* encouraged to prove the reasonableness and necessity of requested fees when those elements are contested. *Id*. at 502.

Relevant to this proceeding, the parties here are not disputing that the Texas Family Code authorizes a trial court to award reasonable attorney's fees and expenses in a suit for dissolution of marriage and a suit affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. §§ 6.708, 106.002. Rather, Mother broadly complains here as she did below, that the trial court abused its discretion by awarding Father's trial counsel the sum of $206,492.09 in attorney's fees and expenses (Issue Fifteen) and more narrowly, Mother also complains there is no provision in the Family Code authorizing a Texas court to award attorney's fees to foreign attorneys for representation provided in the Republic of Mexico (Issue Fourteen). We conclude that both of Mother's arguments challenge the sufficiency of Father's evidence in support of the court's award of attorney's fees and expenses to Father. *See Rohrmoos*, 578 S.W.3d at 484.

Here, the record demonstrates that Father's attorney presented evidence relating to many of the *Arthur Andersen* factors in support of the court's award. For example, Minor described his experience and qualification as a board-certified family law attorney. In narrative form, he

identified the time he spent and work he performed, including time spent in consultation with Father, opposing counsel, A.E.P.'s counselors and teachers, and experts on Mexico law; time spent in mediation; and time spent preparing for and participating in court hearings. Minor pointed out that the case presented certain novel and difficult circumstances, including that Mother was represented at various points in the litigation by five different attorneys (in sequence) and the fact that the couple's child had been abducted by Mother to Mexico.

The record demonstrates that Father repeatedly clarified that he sought to recoup the amount he paid to the Mexico attorneys as expenses, not as attorney's fees. The record shows that both Mexico attorneys were engaged to address legal proceedings brought in Mexico by Mother to further her efforts to avoid having the child returned to Father and to the United States. Father's counsel testified that "[e]verything that is going on in Mexico is a direct result of [Mother] trying to circumvent this court in every action that we've taken in this case and in Mexico with regard to what [Mother] has done is trying to restore this child to this court so this court can make the determination that it was initially asked to do by [Mother]." In other words, Father argues it was necessary for him to engage in legal proceedings in Mexico so that the parallel proceedings in Texas would not be rendered ineffectual. Father's attorney described that he did not have the necessary expertise in Mexico law, so he secured the assistance of two experts in that arena.

Near the end of his testimony, Minor admitted two exhibits, P-3 and P-4, which he identified as summaries that represented the monthly compilation of time expended by himself and his paralegal in the course of representing Father's interest. Exhibit P-3 is titled, "Attorney's Fees Summary," and includes four line items totaling $206,492.09, shown as follows: (1) C. Jeff Minor (Attorney hours: 278; Paralegal hours: 163.25) for a total of $114,022.50; (2) Javier Martinez (Attorney hours: 243.75; Expenses: $5,105.00) for a total of $53,855.00; (3) Adrian Meraz Fereyra

40

(Attorney hours: 189.20) for a total of $35,129.10; and (4) a blank line with no description given for a total of $3,485.49. Minor testified that exhibit P-4 represented a breakdown of the time that he testified to as to specific activities performed by himself and his paralegal. Exhibit P-4 is a three-column exhibit reflecting time entries depicted in part as follows:

| MONTH | ATTORNEY HOURS | PARALEGAL HOURS |
| --- | --- | --- |
| 06/21/13 - 07/20/13 | 18.25 | 2.25 |
| 07/21/13 - 08/20/13 | 2.00 | 1.00 |
| 08/21/13 - 09/20/13 | 4.25 | 3.25 |

\* \* \*

| | | |
| --- | --- | --- |
| 12/21/16 - 01/20/17 | 2.75 | 2.50 |
| 01/21/17 - 02/20/17 | 20.25 | 10.75 |
| 02/21/17 - 03/20/17 | 1.50 | 1.25 |
| Estimated Preparation, Hearing and Post Hearing | 8.00 | 8.00 |
| **TOTAL** | **322.25** | **192.75** |

```
322.25 Hrs.  X  $300.00 per hour  =    $  96,675.00
192.75 Hrs.  X  $ 90.00 per hour  =    $  17,347.50
                        Balance:   =    $ 114,022.50
```

Exhibit P-3 and P-4 differ when comparing the total hours shown for attorney Minor and his paralegal (P-3: 278 total hours for attorney Minor and 163.25 total hours for his paralegal) (P-4: 322.25 total hours for Minor and 192.75 total hours for his paralegal). On cross-examination, when Minor was asked for a breakdown of the time, he responded: "Don't need one. Don't have one."

On review, we conclude that the evidence presented by Father's attorney to support the award of $206,492.09, which also includes fees of foreign attorneys, is not sufficient to establish

41

that the requested fees and expenses were reasonable. *See Rohrmoos*, 578 S.W.3d at 505; *see also* TEX. FAM. CODE ANN. §§ 6.708, 106.002. Without detail about the particular services performed, who performed the services, the reasonable amount of time required to perform the services, and the reasonable hourly rate for each person performing such services, we conclude that Minor's testimony, and exhibits P-3 and P-4, all lack the substance required to uphold an award by the trial court for attorney's fees and expenses. *See Rohrmoos*, 578 S.W.3d at 505; *Nath v. Tex. Children's Hosp.,* 576 S.W.3d 707, 709–10 (Tex. 2019) (per curiam); *Montano*, 414 S.W.3d at 736-37; *El Apple*, 370 S.W.3d at 763-64. Thus, we conclude that Father's evidence in total is legally insufficient to support the award of $206,492.09 for attorney's fees and expenses. Accordingly, because we sustain Issue Fifteen, we further determine there is no need to address the sub-argument presented in Issue Fourteen.

Given that *Rohrmoos* clarified the sufficiency standard applicable to our attorney's fee jurisprudence, and *Rohrmoos* was decided while this appeal remained pending, we remand this case to the trial court in the interest of justice for a redetermination of attorney's fees and expenses to be awarded in favor of Father, if any. *See* TEX. R. APP. P. 43.3(b).

## CONCLUSION

In conclusion, we reverse the portion of the trial court's final decree regarding attorney's fees and expenses and remand the case to the trial court for further proceedings limited to Father's claim of attorney's fees and expenses. We otherwise affirm the trial court's final decree as challenged. *See* TEX. R. APP. P. 43.2(a), (d).


GINA M. PALAFOX, Justice

December 17, 2019

Before Alley, C.J., Rodriguez, and Palafox, JJ.

42